ROBERTS, J.,
for the Court:
¶ 1. Stephen Daniel Montalto entered his best-interest guilty pleas to two counts of aggravated assault in cause number 17937, oné count of kidnapping in cause number 18213, and one count of aggravated assault also in cause number 18213. The Rankin County Circuit Court accepted Montalto’s pleas on September 16, 2008, and sentenced him on September 22, 2008. Mon-talto filed two motions for post-conviction relief (PCR), one motion per cause number, on September 9, 2011. Subsequently, the circuit court entered an order summarily dismissing Montalto’s motions. It is from this summary dismissal that Mon-talto currently appeals and requests this Court grant him immediate release from the custody of the Mississippi Department of Corrections (MDOC), or, in the alternative, to set aside his guilty pleas.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 20, 2006, a Rankin County grand jury indicted Montalto in cause number 17937 for two counts of aggravated assault[1] and one count of grand *1090 larceny stemming from events occurring on June 22-23, 2005. Then, on November 4, 2006, Montalto was involved in a series of incidents in Rankin County after he had been released on bail in September 2005. These later incidents resulted in the grand jury indicting Montalto in cause number 18213 for one count of aggravated assault, one count of kidnapping, and one count of escape.
¶ 3. Montalto initially hired the Honorable Victor Carmody to represent him. However, after his preliminary hearing, Montalto hired the Honorable Sam Wilkins as his attorney. Prior to his plea hearing, Montalto hired the Honorable Arthur R. Harris to represent him. At Montalto’s request, Dr. Gerald O’Brien evaluated Montalto at the Rankin County Detention Center on November 17, 2006. Dr. O’Brien reported that he had no opinion as to whether Montalto could rationally understand the proceedings against him, but he did have questions as to whether Montalto could sufficiently communicate with his attorney. According to his report, Dr. O’Brien stated that Mon-talto may be suffering from a significant affective disorder, possibly bipolar disorder. Dr. O’Brien recommended Montalto undergo a comprehensive evaluation to determine his competency. The circuit court subsequently entered an order in October 2007 for a mental evaluation and treatment for Montalto. The order stated that the evaluation was a result of Montal-to’s motion to be transferred to Whitfield pursuant to Mississippi Code Annotated section 99-13-11 (Rev.2007) and Uniform Rule of Circuit and County Court 4.08. Among other things, the circuit court ordered Montalto’s transfer and evaluation to determine whether he was competent to stand trial.
¶4. In February 2008, Dr. Criss Lott filed his detailed, eighteen-page evaluation report on Montalto. He evaluated Montal-to on two occasions: the first on February 4, 2008, at the Rankin County Detention Center; and the second on February 8, 2008, at Dr. Lott’s office. In his report, Dr. Lott provided the following findings:
It is my opinion, to a reasonable degree of psychological certainty, that [Montal-to] has the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding, and he has a good rational and factual understanding of the nature and object of the legal proceedings against him. [Montalto] recognizes the nature and possible consequences of the charges against him. He [understands] the roles of the major participants in the court[,] and he noted that he had not had any difficulty communicating with his attorney. He had a very good understanding of the plea process.... [Montalto] should have no difficulty comprehending and communicating with his attorney about his case.
Montalto then filed a motion for an independent medical determination of his competency to stand trial. He also filed notice of his intent to use insanity as a defense at trial. At Montalto’s request, Dr. Rodrigo Galvez performed an evaluation on Montal-to. Dr. Galvez’s report, dated June 2, 2008, stated that Montalto was mentally ill and should get psychiatric treatment before trial. The report also noted that he found no family history of psychiatric illnesses or treatments and that Montalto was of average intelligence. Further, Dr. Galvez found that Montalto was “in contact *1091 with reality” and that Montalto denied he suffered from any hallucinations, delusions, or illusions. Dr. Galvez’s conclusion was that Montalto does suffer from bipolar disorder, rendering him unable to understand the consequence of his behavior during the November 4, 2006 crimes. Dr. Galvez further concluded that Montalto was unable to tell right from wrong at the time of the November 4, 2006 crimes.[2] However, the report did not contain any opinion about Montalto’s competency to stand trial.
¶ 5. Montalto’s cases were set for trial approximately eight times, with the final agreed order setting his trial for September 16, 2008. The day before his scheduled trial, on September 15, 2008, Montalto appeared before the circuit court to enter a best-interest plea. At this hearing, the State moved to amend the indictment in cause number 17937 to correct the spelling of Montalto’s first name. Additionally the State sought to amend Count I in the same cause number. In that count, Montalto was charged with a violation of Mississippi Code Annotated section 97 — 3—7(2)(b); however, the intent language in the indictment was that of Mississippi Code Annotated section 97-3-7(2)(a).[3] Montalto did not object to either amendment and specifically noted that the amended indictment heightened the State’s burden of proof. After granting the State’s motions to amend the indictment, the circuit court questioned Montalto as to whether he understood everything in his guilty-plea petition. Mon-talto indicated that he did not, so the circuit court allowed him to confer with his attorney. Montalto then stated that he understood everything in his guilty-plea petition, but when questioned as to whether everything in his guilty-plea petition was true and correct, Montalto responded no. The circuit court recessed the hearing and stated it could not accept Montalto’s guilty pleas and that trial would commence as scheduled on the following day.
¶ 6. On September 16, 2008, Montalto again appeared before the circuit court prior to trial to enter his best-interest pleas. Montalto informed the circuit court that he was thirty-two years old with a high school diploma and six years of college education. The circuit court questioned Montalto’s attorney if he was “of the opinion and belief [that Montalto] appreciates the nature and consequences of his actions.” Montalto’s attorney responded: “I do, your Honor. And I have specifically asked him, over the course of the last couple of days, about his medications and whether or not it would make him become unaware of what he was doing, and he satisfied me that, despite the medications, ... he understood what he was doing.” The circuit court then asked Mon-talto’s attorney whether Montalto had been able to assist in his defense; the response was ‘Tes, sir.” The circuit court then meticulously questioned Montalto about his guilty-plea petition. Montalto affirmed he had read and signed and that he understood his petition. The circuit court then explained all the elements of the crimes Montalto was pleading to committing, the minimum and maximum sentences possible, and the constitutional rights he would be waiving as a result of the pleas. Montalto indicated that he understood these explanations. The State presented its factual basis for each charge, and Montalto agreed that the State could *1092 prove each factual basis. Montalto also affirmed that he was entering his pleas not under any threat, force, intimidation, or promises of reward. The circuit court also questioned Montalto about his satisfaction with his attorney’s performance. Montalto had no complaints about his attorney’s performance and was satisfied with his representation. The State announced that, as a result of negotiations, the following recommendation would be presented: twenty years for Count I in cause number 17937, twenty years for Count I in cause number 18213, twenty years for Count II in cause number 17937, and twenty years for Count II in cause number 18213. The sentences in Count I of both cause numbers would run concurrently to one another. The sentences in Count II of both cause numbers would run concurrently to one another. The sentences in Counts I and II would run consecutively to one another. Further, and importantly, the sentences in Count II in both cause numbers would be suspended, and Montalto would be placed on five years of supervised probation. Montalto would also be subject to registration as a sex offender because the kidnapping offense involved a young child. The State also recommended that Counts III in both cause numbers would be dismissed upon the circuit court’s acceptance of Montalto’s pleas. After Montalto expressed some confusion regarding the recommendation, the circuit court stated that it “believe[d Montalto] understood] what the recommendation was[,]” but that it was not too late to stop the hearing if Montalto desired. Montalto again expressed his desire to continue with the hearing and proceeded to plead guilty to the charges. The circuit court accepted Montalto’s pleas as freely, voluntarily, and knowingly given and found that there was a sufficient factual basis provided.
¶ 7. The State then sought to put in the record that while Montalto had filed a notice of intent to use insanity as a defense, an expert had found Montalto to be sane and competent. The circuit court made a clear finding of Montalto’s present competency when it stated that “it was clear to [it] that [Montalto] was aware of what was going on[,] and [he] was participating with [his attorney] in his defense .... And under [the] circumstances, [the circuit court was] convinced that he [was] aware of what [was] going on, and this [was] a valid plea, or otherwise, [the circuit court] would not have taken it.” Sentencing was postponed until September 22, 2008.
¶ 8. At his sentencing hearing, Montalto asked the court to “see to it that [he receive] the medical and mental treatment that [he needed] so [he could] continue with [his] life.” Montalto’s attorney also stated that Montalto was on medication for a mental illness, “which is easing some of the burden that he himself ha[d] been living with for the last few years.” The State responded that none of the psychological reports indicated that Montalto was not competent to stand trial or enter a plea. The circuit court accepted the State’s above recommendation as to Mon-talto’s sentence. Montalto was also ordered to pay court costs of $615, to be paid within six months of his release.
¶ 9. Montalto filed his pro se PCR motions on September 9, 2011. His PCR motion in cause number 17937 alleged ineffective assistance of counsel, an improper indictment, and violations of his due-process rights. In cause number 18213, Mon-talto’s PCR motion claimed a violation of his due-process rights and ineffective assistance of counsel. The circuit court summarily dismissed Montalto’s PCR motions. Feeling aggrieved, Montalto executed the current appeal and argues that his due-process rights were violated and *1093 that he received ineffective assistance of counsel.
STANDARD OF REVIEW
¶ 10. “When reviewing a circuit court’s denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are ‘clearly erroneous’; however, we review the circuit court’s legal conclusions under a de novo standard of review.” Boyd v. State, 65 So.3d 358, 360 (¶ 10) (Miss.Ct.App.2011).
ANALYSIS
I. DUE PROCESS
¶ 11. In regard to his due-process rights, Montalto claims that the failure of the circuit court to conduct a competency hearing was a violation and that there was a two-year delay in having the ordered psychiatric exam performed. Additionally, he submits that the suppression of a police surveillance video was a violation of his due-process rights and that his Miranda[4] rights were violated. Montalto also claims that the State’s amendment to the indictment was impermissible. Lastly, he claims that his guilty pleas were involuntary because they were induced by fear and false promises.
A. Competency
¶ 12. There are two distinct instances in which a defendant’s mental state of mind may become relevant: (1) at the time of the crime, or (2) at trial or the guilty-plea hearing. “[C]ompetency to stand trial is an entirely different issue from an insanity defense because the latter concerns the defendant’s present mental capacity while the former relates to a past mental state.” Sanders v. State, 9 So.3d 1132, 1137 (¶ 21) (Miss.2009) (citation omitted). The supreme court has adopted the standard for determining competency based on the seminal case of Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). “The standard for competence to stand trial is whether the defendant has ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding1 and ‘has a rational as well as factual understanding of the proceedings against him.’ ” Martin v. State, 871 So.2d 693, 697-98 (¶ 17) (Miss.2004) (quoting Dusky, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824). The test for insanity at the time of the crimes differs from the determination of competency to stand trial or enter a guilty plea.
In Mississippi, the test set forth in M’Naghten’s Case, 10 Clark & F. 200, 210, 8 Eng. Rep. 718, 722 (1843), is applied by our courts in determining the sanity of a defendant. For a defendant to be found insane, he must not have had “the ability to realize and appreciate the nature and quality of his deeds when committed and the ability to distinguish between right and wrong.”
Rodgers v. State, 100 So.3d 989, 993 (¶ 12) (Miss.Ct.App.2012) (internal citation omitted) (quoting Russell v. State, 729 So.2d 781, 784 (Miss.1997)). For example, a defendant may have been M’Naghten insane at the time of the crimes, but is presently fully competent to stand trial or enter a guilty plea. Governing issues of competency at the time of trial is Uniform Rule of Circuit and County Court 9.06, which states:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental exami *1094 nation by some competent psychiatrist selected by the court....
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
The same standard for competency applies when a defendant enters a guilty plea. Smith v. State, 831 So.2d 590, 593 (¶ 11) (Miss.Ct.App.2002).
¶ 13. First, we note Montalto argues that there was a two-year delay between when the circuit court ordered a psychiatric evaluation of Montalto and when the court-ordered evaluation was actually performed by Dr. Lott. The psychiatric evaluation was ordered in October 2007, and Dr. Lott’s evaluations of Montalto and report were filed with the circuit court in February 2008. Thus, Montalto’s claim is without merit, as two years did not pass.
¶ 14. Next, we address Montalto’s claim that the circuit court erred in failing to conduct a competency hearing after the circuit court ordered a psychiatric evaluation, including an evaluation of his competency to stand trial. According to Montal-to, there existed at least one opinion from a doctor concerned about Montalto’s ability to communicate with his attorney about the current legal situation.
¶ 15. Uniform Rule of Circuit and County Court 2.04 states: “It is the duty of the movant, when a motion or other pleading is filed, ... to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion.... ” Although the record does not contain the motion from Montalto, the circuit court’s order granting a mental evaluation stated that it was before the circuit court “on the motion of the [defendant....” After Dr. Lott’s evaluation and report were filed with the circuit court, Montalto filed a motion for an independent medical determination on the issue of Montalto’s competency. Following that motion, Montalto was evaluated by Dr. Galvez. In his report, Dr. Galvez stated that Montalto should be given “adequate psychiatric treatment before he goes to trial.” Dr. Galvez made no definitive statement finding Montalto presently incompetent. The record contains no other evidence that Montalto or his attorney attempted to request the circuit court hold a hearing on Montalto’s competency. Further, in response to the circuit court’s detailed questioning at the guilty-plea hearing on whether he was “of the opinion and belief [that Montalto] appreciate^] the nature and consequences of his actions[,]” Montal-to’s attorney responded affirmatively and noted that Montalto “satisfied [him] that, despite the medications, ... he [understood] what he was doing.” Montalto’s attorney also stated that Montalto was able to assist in his own defense. Further, in Montalto’s guilty-plea petition, Montalto and his attorney both signed a certificate of attorney of record, which contained the following statement: “Having discussed this matter carefully with [Montalto], I [ (Montalto’s attorney) ] am satisfied that he is mentally competent and physically sound; there is no mental or physical condition of which I am aware which would affect his ability to understand these proceedings .... ” Later in the guilty-plea hearing, the circuit court stated “for the record ... that it was clear ... that [Mon-talto] was aware of what was going on and [was] participating with [his attorney] in *1095 his defense.” The circuit court also noted that Montalto was “the one that raised best interest yesterday [at the guilty-plea hearing]. And under these circumstances, [the circuit court was] convinced that [Montalto was] aware of what [was] going on, and this [was] a valid guilty plea.... ” As was stated above, the record contains no evidence that Montalto or his attorney expressed concern about Montalto’s competency or lack of a competency hearing when entering his guilty pleas. Montalto’s abandonment of the motion notwithstanding, we still find that the circuit court made an implicit, if not explicit, finding based upon the totality of the evidence before it that Montalto was presently competent. We detect no reversible error in the circuit court’s failure to hold a separate and distinct competency hearing.
¶ 16. Most recently in Sanders v. State, 9 So.3d at 1133, the Mississippi Supreme Court reversed and remanded the case for a new trial due to the circuit court’s failure to conduct a competency hearing pursuant to Rule 9.06. However, we find Sanders is distinguishable from the present case. In Sanders, the supreme court stated:
[0]ne may argue or speculate that the appellate record before us today was sufficient to assume that [Keith] Sanders was competent to stand trial. However, we reiterate the fact that the appellate record before use contains no evidence that Sanders was found to be competent to stand trial. At a minimum, there was no definitive testimony or report that determined Sanders competent to stand trial. Thus, we are bound by the record before us. Without any evidence concerning Sanders’s competency to stand trial, to hold that testimony regarding sanity at the time of the offense is sufficient to demonstrate competency to stand trial would disregard and blur the well-established distinction between the two legal concepts.
Sanders, 9 So.3d at 1139 (¶ 25). In the present case, the appellate record provides evidence that Montalto was competent to enter his guilty pleas. First, we have Dr. Lott’s report finding that Montalto was competent to go to trial or enter a guilty plea. In Sanders, the circuit court did not make a finding on the record regarding Sanders’s competency; whereas, in the present case, the circuit court stated that it was clearly satisfied with Montalto’s understanding of the crimes and charges and his ability to confer with his attorney. Montalto’s attorney even confirmed Mon-talto’s present competency to enter his guilty pleas. Also, Montalto asked the circuit court if he would get credit for time he spent in pretrial detainment. As such, we find Montalto’s case distinguishable from Sanders and that there is sufficient evidence contained in the record for this Court to likewise conclude that Montalto was competent to enter his guilty pleas.
¶ 17. This issue is without merit.
B. Voluntariness of the Pleas
¶ 18. Montalto next argues that his pleas were involuntary because they were the product of fear and false promises. “A plea is considered voluntary when the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea.” Pearson v. State, 906 So.2d 788, 791-92 (¶ 11) (Miss.Ct.App.2004) (citing Wilson v. State, 577 So.2d 394, 396-97 (Miss.1991)). Montalto claims on appeal that he was told he would be eligible for parole after one year and that he was improperly medicated. A review of the record reveals that Montalto expressed that he was not threatened or intimidated into entering guilty pleas, nor was he promised or given hope of a reward for entering guilty pleas. He also affirmed *1096 that he was the one that decided to enter his guilty pleas. Statements made in open court under oath “carry a strong presumption of veracity.” Nichols v. State, 955 So.2d 962, 965 (¶ 6) (Miss.Ct.App.2007) (quoting Herrod v. State, 901 So.2d 635, 636 (¶ 5) (Miss.Ct.App.2004)). Montalto has not presented any other evidence besides the assertions in his brief that he was promised anything in exchange for his guilty pleas, or that he was intimidated into entering his guilty pleas.
¶ 19. This issue is without merit.
C. Suppression of Evidence, Miranda Violations, and Amended Indictment
¶ 20. Because we find that Montalto entered voluntary and valid guilty pleas, his claim involving his Miranda rights, and his claim that the circuit court improperly suppressed police surveillance videos have been waived. “[A] valid guilty plea operates as a waiver of all non-jurisdictional rights or defects which are incident to trial.” Anderson v. State, 577 So.2d 390, 391 (Miss.1991) (citing Ellzey v. State, 196 So.2d 889, 892 (Miss.1967)); see also Jones v. State, 922 So.2d 31, 33-34 (¶¶ 4-8) (Miss.Ct.App.2006) (citations omitted).
¶ 21. Montalto also contends that the circuit court erred in allowing the State to amend his indictment. Montalto was charged with a violation of Mississippi Code Annotated section 97 — 3—7(2)(b); however, the intent language in the indictment was that of Mississippi Code Annotated section 97-3-7(2)(a). First, we find that Montalto was given fair notice of the crimes with which he was charged. Mon-talto did not object to the amendment and specifically noted that the amended indictment heightened the State’s burden of proof. Further, a valid guilty plea waives certain constitutional rights, including in-sufficiencies or defects of form in the indictment. Shields v. State, 75 So.3d 86, 89 (¶ 9) (Miss.Ct.App.2011) (citing Conerly v. State, 607 So.2d 1153, 1156 (Miss.1992)). The amendments to Montalto’s indictment were of form and not substance, and it does not appear that Montalto was in any way prejudiced by the amendment since he desired to plead guilty to the amended counts. Therefore, this issue is without merit.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 22. “In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney’s performance was deficient, and that the deficiency was so substantial as to deprive [him] of a fair trial.” Parker v. State, 30 So.3d 1222, 1233 (¶ 37) (Miss.2010) (citations omitted). Additionally, “an appellate court must strongly presume that counsel’s conduct falls within a wide range of reasonable professional assistance.” Robinson v. State, 75 So.3d 1148, 1152 (¶ 14) (Miss.Ct.App.2011) (quoting Liddell v. State, 7 So.3d 217, 219 (¶ 6) (Miss.2009)). In the context of reviewing a guilty plea, “the defendant must show that, were it not for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Burrough v. State, 9 So.3d 368, 375 (¶ 22) (Miss.2009).
¶ 23. Montalto asserts a variety of claims that his attorney was deficient. Some of those claims include: that his attorney failed to properly research Mon-talto’s background and mental illness; that his attorney did not present any exculpatory or mitigating evidence at his plea or sentencing hearings; that his attorney failed to challenge the police’s theory of the case; that his attorney did not investigate any other individuals involved in the incidents; and that his attorney did not protect his right to a speedy trial.
¶ 24. While Montalto raises these alleged deficiencies, he nowhere *1097 claims that, were it not for the deficiencies, he would have insisted on going to trial and would not have entered his guilty pleas. A review of the record indicates that Montalto did not dispute that he committed the crimes and that the State had a strong case against him, including a confession.[5] His claims primarily involve his attorney’s failure to investigate his mental state at the time of the crimes; however, once found competent to enter a guilty plea, Montalto’s mental state at the time of the crime is not relevant to the validity of his guilty pleas. M’Naghten insanity at the time of the crimes is an affirmative defense that must be pled, and, when disputed, the affirmative defense is normally resolved by a jury at trial. An otherwise valid guilty plea waives this affirmative defense. Additionally, Montalto was initially indicted for two counts of aggravated assault and one count of grand larceny in cause number 17937 and one count of kidnapping, one count of aggravated assault, and one count of escape in cause number 18213. With the help of his attorney, Montalto negotiated the dismissal of two charges and was only sentenced to serve, on all remaining four counts, forty years in the custody of the MDOC, with twenty years of the sentence suspended and five years of supervised probation. Solely based on the three aggravated-assault charges, Montalto could have been sentenced up to sixty years in the custody of the MDOC had he gone to trial. Montalto was subject to a possible life sentence for kidnapping. We simply cannot conclude that Montalto has shown that he would have insisted on going to trial but for his attorney’s deficiencies. He makes no such claim.
¶ 25. Finally, the supreme court “has implicitly recognized in the post-conviction relief context that where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit.” Vielee v. State, 653 So.2d 920, 922 (Miss.1995) (citing Brooks v. State, 573 So.2d 1350, 1354 (Miss.1990)). Montalto submits nothing else beyond his brief to support his assertions; thus, we can find no merit in his argument.
¶ 26. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. JAMES, J., CONCURS IN PART.

. In cause number 17937, Montalto was charged with violating Mississippi Code Annotated section 97 — 3—7(2)(b) (Rev.2006). This statute has since been amended in 2012, and *1090 the numbering in the amended version differs from the prior version. For the purposes of this opinion, we will rely on the prior version.

. The record is void of any expert report or opinion that Montalto was legally insane when committing the June 22-23, 2005 crimes in cause number 17937.

. Section 97-3-7(2)(b) requires unlawful, knowing, and purposeful intent, while section 97-3-7(2)(a) requires recklessness under circumstances manifesting extreme indifference to the value of human life.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Montalto does not dispute that these incidents occurred; however, he does claim that his intent was incorrectly perceived as being malicious and dangerous when, in actuality, his mental illness convinced him that his actions were helpful.