ROBERTS, J.,
for the Court:
MODIFIED OPINION ON REHEARING
¶ 1. Acting on its own motion, this Court grants rehearing in this matter, withdraws *1116 its prior opinion, and substitutes this opinion in its place.
¶ 2. This case centers on a circuit court’s authority to reinstate a prisoner’s suspended sentence based on misconduct that occurred while he was still serving his initial ten-year sentence as an inmate under the supervision of the Mississippi Department of Corrections (MDOC). Christopher Sobrado appeals the Pontotoc County Circuit Court’s judgment summarily dismissing his motion for post-conviction relief (PCR) after the circuit court ostensibly revoked his post-release supervision and reinstated the suspended portion of his sentence for burglary of a dwelling. Because the record on appeal does not clearly indicate whether the conduct that led to the circuit court’s decision occurred while Sobrado was still an inmate on earned-release supervision (ERS) or whether he had been officially discharged from his ten-year sentence and placed on post-release supervision, we reverse the circuit court’s judgment and remand this matter for an evidentiary hearing as described below.
FACTS AND PROCEDURAL HISTORY
¶ 3. Sobrado was indicted for two counts of burglary of a dwelling. The prosecution and Sobrado negotiated a plea agreement that the prosecution would “retire” one burglary charge in exchange for Sobrado’s guilty plea to the second burglary charge. The plea agreement was also contingent upon Sobrado’s payment of restitution to both of the burglary victims.
¶4. On April 10, 2003, Sobrado went before the circuit court and pled guilty to the second count of burglary of a dwelling.[1] The circuit court accepted Sobrado’s guilty plea and followed the prosecution’s sentencing recommendation. Specifically, the circuit court sentenced Sobrado to twenty-five years in the custody of the MDOC, with fifteen years suspended and ten years to serve, followed by five years of post-release supervision.[2]
¶ 5. Additionally, the circuit court ordered Sobrado to pay restitution to the two burglary victims. To ensure that So-brado complied with his restitution obligation, the circuit court told Sobrado, “Upon completion of your sentence, you will be placed on five years [of] post-release supervision, [and] you will be placed in a restitution center as designated by the [MDOC] until all fines, cost[s,] and restitution are paid.” In the circuit court’s subsequent sentencing order, the circuit court specified the conditions of Sobrado’s post-release supervision.[3] Among other conditions, the circuit court reserved the right to revoke Sobrado’s post-release supervision if Sobrado failed to pay restitution to the victims. The circuit court further ordered that during Sobrado’s term of post-release supervision, he “shall be transported to the restitution center to successfully complete and pay all cost[s], fines, and restitution.”
¶ 6. On January 16, 2008, Sobrado was reclassified by the MDOC and placed on ERS.[4] As an MDOC inmate, Sobrado was *1117 sent to the Hinds County Restitution Center. In February 2008, Sobrado began working at two restaurants. Sobrado was obligated to tender his paychecks to the restitution center, but he failed to tender approximately $2,800 of his earnings. So-brado was later transferred to two other restitution centers, where he tendered all of his paychecks to the MDOC. Based on the record, it appears that Sobrado spent seventeen months in various restitution centers. Through June 2009, Sobrado had deposited a total of approximately $9,200 toward his restitution. After deducting for his room and board and his personal allowance, Sobrado’s restitution account contained approximately $4,200.
¶ 7. On June 19, 2009, he was fired from his job at Wendy’s. Two days later, he was written up for “disobeying a direct order of a[n MDOC] staff member.” On June 22, 2009, MDOC Field Officer Fannie Tonth signed a “warrant for [Sobrado’s] arrest [for] violation of [his] probation.” According to Officer Tonth, Sobrado “violated the terms of [his] order of probation” when he: (a) was fired from his job on June 19, 2009; (b) refused to obey an order to wake up and clean his area on June 21, 2009; and (c) when he requested to sign out of the restitution center on June 22, 2009.
¶ 8. According to Officer Tonth’s violation-report form, the MDOC discharged Sobrado from ERS on June 21, 2009.[5] At that time, Sobrado began his term of post-release supervision. In other words, on June 21, 2009, Sobrado appears to have been officially discharged from his initial ten-year sentence. However, the record does not contain what has been described as a “gold certificate of discharge” from the MDOC. ■
¶ 9. On July 7, 2009, the State filed a petition to revoke Sobrado’s post-release supervision and impose the suspended portion of the circuit court’s sentence. The next day, the circuit court conducted a hearing on the State’s petition. Based on Sobrado’s allegations that there were discrepancies between his earnings and his deposit account while he was on ERS, the circuit court continued the hearing until September 11, 2009, so Joe Cotton, the MDOC director of accounting, could testify and reconcile the discrepancies. Cotton later testified that the discrepancies were related to the fact that Sobrado simply cashed some of his paychecks during 2008, and he did not tender them to the restitution center.
¶ 10. Ultimately, the circuit court concluded that Sobrado more likely than not violated the terms of his post-release supervision by failing to abide by the rules of the restitution center. As a result, the circuit court reinstated the fifteen-year portion of Sobrado’s suspended sentence. However, the circuit court suspended five years of that sentence and required Sobra-do to serve ten more years in MDOC custody, followed by five years of post-release supervision.
¶ 11. In August 2011, Sobrado filed a PCR motion attacking the validity of the circuit court’s revocation of his post-release supervision incident to case number CR02-144. Among other issues, Sobrado claimed the circuit court lacked jurisdiction to revoke his post-release supervision and *1118 reinstate the previously suspended portion of his sentence. He also claimed that his' post-release supervision was unlawfully revoked. Without requiring a response from the State, the circuit court “denied” Sobra-do’s PCR motion.[6] Sobrado appeals.
STANDARD OF REVIEW
¶ 12. “This Court will not disturb a [circuit] court’s dismissal of a [PCR motion] unless the [circuit] court’s decision was clearly erroneous.” Wardley v. State, 37 So.3d 1222, 1223-24 (¶ 4) (Miss.Ct.App.2010). A circuit court “may summarily dismiss a PCR motion where ‘it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief.’ ” White v. State, 59 So.3d 633, 635 (¶ 4) (Miss.Ct.App.2011) (quoting Miss.Code Ann. § 99-39-11(2) (Supp.2010)). Questions of law receive a de novo review. Id.
ANALYSIS
¶ 13. Sobrado claims that the circuit court erred when it revoked his post-release supervision. He further argues that the circuit court had no authority to revoke his post-release supervision for conduct that occurred while he was on ERS.[7]
¶ 14. Based on various statutory mechanisms that may operate to reduce the time that an offender must remain incarcerated for a felony sentence, Sobrado was “released” from prison after he had served approximately four and one-half years of the circuit court’s initial ten-year sentence for burglary of a dwelling. As required by Mississippi Code Annotated section 47-5-138(6) (Supp.2013), the MDOC placed So-brado on ERS. Notwithstanding Sobrado’s “release” from incarceration, while he was on ERS, he “retained] inmate status and remained] under” the MDOC’s jurisdiction. Miss.Code Ann. § 47-5-138(6). To remain an inmate on ERS, Sobrado was obligated to observe certain conditions set by the MDOC. Id.
¶ 15. ERS is operated exclusively by the MDOC, with no involvement by circuit courts. Violations of ERS conditions are only reported to the MDOC. See Miss. Code Ann. § 47-7-27(3) (Supp.2013). MDOC “hearing officers” will then conduct revocation hearings. Miss.Code Ann. § 47-5-138(6). If a hearing officer finds that an inmate violated ERS conditions and revokes the inmate’s ERS, the inmate “shall serve the remainder of the sentence,” with credit for the time he was on ERS. Miss.Code Ann. § 47-5-138(7) (Supp.2013). For reasons that are not apparent in the record, the MDOC took no steps to revoke Sobrado’s ERS for violat *1119 ing the rules and regulations of the restitution center.
¶ 16. Post-release supervision is significantly different than ERS. Circuit courts have the exclusive authority to sentence qualified offenders to a term of post-release supervision. See Miss.Code Ann. § 47-7-34(1) (Rev.2011). Circuit courts set the conditions that an offender must follow while he is on post-release supervision. Miss.Code Ann. § 47-7-37 (Rev. 2011). Violations of those conditions are reported to the circuit court. Id. And the circuit court conducts revocation hearings when there are allegations that an offender on post-release supervision violated the circuit court’s conditions. Id. Finally, the circuit court has the sole authority to revoke an offender’s post-release supervision for violations occurring while an offender is on post-release supervision and “impose any part of the sentence [that] might have been imposed at the time of conviction.” Id. Suffice it to say, while Sobrado was an inmate on ERS, he could not simultaneously be on post-release supervision. See Jones v. State, 97 So.3d 1254, 1258 (¶ 10) (Miss.Ct.App.2012).
¶ 17. Officer Tonth raised three specific claims that Sobrado violated the conditions of his post-release supervision: (1) when he got fired from his job on June 19, 2009; (2) when he disobeyed an order to get up and clean his area on June 21, 2009; and (3) when he signed out of the restitution center on June 22, 2009. The circuit court could only revoke Sobrado’s post-release supervision for misconduct that occurred while he was actually on post-release supervision. See Smith v. State, 742 So.2d 1146, 1148 (¶ 11) (Miss.1999). “One cannot violate a condition of [post-release supervision] that does not [yet] exist.” Id.
¶ 18. As previously mentioned, Officer Tonth’s rule-violation report states that the MDOC discharged Sobrado from ERS on June 21, 2009. After his discharge, Sobrado immediately began his term of post-release supervision. Thus, the circuit court could not have revoked Sobrado’s post-release supervision for misconduct that occurred while he was on ERS. While Sobrado was on ERS, he was classified as an inmate under the exclusive jurisdiction of the MDOC. See Miss.Code Ann. § 47-5-138(6). A circuit court cannot revoke a term of post-release supervision for conduct that occurred while a prisoner is an inmate in the MDOC’s legal custody. Jones, 97 So.3d at 1258 (¶ 11). But in Edwards v. State, 946 So.2d 822, 824 (¶ 8) (Miss.Ct.App.2007), this Court affirmed a circuit court’s decision to revoke an inmate’s post-release supervision for conduct that occurred while the inmate was on ERS. In so doing, this Court held that “it was immaterial as to whether [a prisoner] was under [ERS] or post-release supervision at the time he violated the terms of his probation.” Id. (quoting Grace v. State, 919 So.2d 987, 989 (¶ 8) (Miss.Ct.App.2005)). To the extent that Edwards allows a circuit court to revoke an inmate’s post-release supervision for misconduct that occurred while the inmate was on ERS, Edwards is overruled.
¶ 19. The circuit court held that Sobra-do violated the terms of his post-release supervision by “[f]ail[ing] to complete the [r]estitution [c]enter as ordered. The offender signed himself out of [the] center [because he] wish[ed] to appear back before the [cjircuit [c]ourt.” There was testimony that Sobrado requested to sign out of the restitution center on June 21, 2009. The record does not indicate whether So-brado had been discharged from ERS at that time. However, in the warrant for Sobrado’s arrest for violating his “probation,” Officer Tonth charged that Sobrado *1120 also requested to sign out of the restitution center on June 22, 2009. But as Sobrado noted during the revocation hearing, there was no documentary proof that Sobrado had signed out of the restitution center. During the revocation hearing, it was clear that Sobrado wanted an explanation regarding the discrepancy between the balance of his restitution account and the amount of money that he had earned while he was housed at various restitution centers. It is also clear that Sobrado did not understand the nature of his joint and several liability to pay restitution to the two burglary victims. After hearing the circuit court’s explanations, Sobrado said, “I’d just like to apologize to the [cjourt for taking up its time.” Sobrado then asked the circuit court to give him “another opportunity to pay [restitution].”
¶ 20. The State argues that based on Rodriguez v. State, 839 So.2d 561 (Miss.Ct.App.2003), it was permissible for the circuit court to revoke Sobrado’s post-release supervision. Curtis Rodriguez was convicted of aggravated assault and sentenced to twelve years in the. custody of the MDOC, with eleven years suspended and one year to serve, followed by five years of “supervised probation.” Id. at 563 (¶ 2). The circuit court also ordered Rodriguez to pay restitution to the victim. Id. While Rodriguez was on probation, the circuit court ordered that he be sent to a restitution center. Id. at (¶ 3). Based on Rodriguez’s violation of restitution-center rules while he was on probation, the circuit court revoked his probation and reinstated the previously suspended eleven-year portion of his sentence. Id. at (¶ 5). This Court held that there was “adequate evidence to revoke [Rodriguez’s] probation.” Id. at 564 (¶ 10). But the question in Sobrado’s case is different. The issue is whether Sobrado was an inmate on ERS when the alleged violations occurred, or whether he had been discharged from his initial ten-year sentence and placed on post-release supervision with the circuit court.
¶ 21. With utmost respect, the dissent fails to comprehend the issue in this case. Contrary to the dissent’s claim, this opinion does not question “the validity of the failure to pay restitution as a basis for revocation of a suspended sentence.” The circuit court specifically sentenced Sobrado to twenty-five years in the custody of the MDOC, with fifteen years suspended and ten years to serve, followed by five years of post-release supervision. The circuit court set conditions that Sobrado must obey during that five-year term of post-release supervision. There is no question that the circuit court had the authority to set those conditions of post-release supervision.
¶ 22. Sobrado was an inmate in the custody of the MDOC until he was discharged from his ten-year initial sentence. The circuit court sentenced Sobrado on April 10, 2003. The dissent is incorrect that there was a “condition to the suspension of his sentence and of his [post-release supervision].” The dissent further states that “the original sentencing order required Sobrado to attend the restitution center to complete restitution as a term and condition prior to receiving his suspended sentence and post-release supervision.” That statement is simply false. The circuit court suspended fifteen years of Sobrado’s sentence on the very day that he was sentenced. The circuit court did not “conditionally” suspend part of So-brado’s sentence; the circuit court unequivocally suspended fifteen years of his sentence. If Sobrado was to violate the conditions of his post-release supervision during the five-year period that he was actually on post-release supervision, then the circuit court could revoke the entire fifteen years of Sobrado’s suspended sentence. Terminology is important. The *1121 suspended portion of Sobrado’s sentence was not “conditionally” suspended based on some not-yet-determined future event, such as successful completion of the restitution center.
¶ 23. The outcome-determinative issue in this case is whether the circuit court had jurisdiction to revoke Sobrado’s suspended sentence. Section 47-7-37 provides that “[a]t any time during the period of probation the court, or judge in vacation, may issue a warrant for violating any of the conditions of probation.... ” (Emphasis added). Our statute on post-release supervision states that “[t]he period of post-release supervision shall be conducted in the same manner as a like period of supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish.” Miss.Code Ann. § 47-7-34(2). “Procedures for termination and recom-mitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence.” Id. Stated differently, the circuit court can issue a warrant for arrest for a violation that occurs during the period of probation or post-release supervision. This is the exact principle announced by the supreme court in Smith, 742 So.2d at 1148 (¶ 11).
¶ 24. In its wisdom, the Mississippi Legislature has authorized the MDOC to reclassify inmates to ERS status or the Intensive Supervision Program (ISP) — colloquially known as “house arrest” — if they meet certain requirements. The MDOC can then release those inmates from physical custody prior to their final discharge from their term of imprisonment. During this period of time prior to their official discharge, such inmates are still within the exclusive jurisdiction of the MDOC. Some refer to such inmates as “outmates.” If they violate the conditions of ERS or ISP as set by the MDOC, then the MDOC has the sole authority to reclassify them and return them to custody status. If such an “outmate” commits a new crime while on ERS or ISP status, he certainly may be prosecuted for that new offense. However, only the MDOC can reclassify him to custody status by revoking his ERS and require that he serve out the balance of his initial sentence.
¶ 25. The record does not contain documentation to support the fact that So-brado was actually discharged from ERS on June 21, 2009. It is unclear whether Sobrado was on post-release supervision at the time the alleged misconduct that led to his revocation occurred. Furthermore, due to the contents of the record before us, we cannot determine whether Sobrado signed out of the restitution center. And if he did, we cannot determine if his reasoning was based on his refusal to participate in the program, or whether he simply wanted an explanation regarding the balance of his account and the nature of his joint and several liability. It is unclear whether the rules of the restitution center provide a mechanism for Sobrado’s seemingly reasonable requests. Furthermore, it is unclear whether Sobrado had an avenue to receive the information he sought, yet chose not avail himself of it. Consequently, we reverse the judgment of the circuit court and remand this matter for an evidentiary hearing.
¶ 26. During that evidentiary hearing, the circuit court must determine if the MDOC had discharged Sobrado from ERS and placed him on post-release supervision on June 21, 2009. Additionally, the circuit court must determine whether Sobrado had signed out of the restitution center. If he had, the circuit court must determine whether Sobrado’s decision to sign out of the restitution center because he wanted explanations regarding his restitution ac *1122 count and the nature of his joint and several liability is tantamount to his refusal to abide by the terms of the restitution center. Naturally, Sobrado’s misconduct that occurred before he was actually placed on post-release supervision will be irrelevant during the evidentiary hearing, because the circuit court had no authority to revoke Sobrado’s post-release supervision for misconduct that occurred while he was on ERS.
¶ 27. As a final note, it bears mentioning that Sobrado filed a motion for immediate release with this Court. We entered an order passing that motion for consideration of the merits of this appeal. Based on our resolution of Sobrado’s appeal, we find that his motion for immediate release is moot.
¶ 28. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PONTOTOC COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. The file before the circuit court bore the cause number CR02-144.

. The circuit court set Sobrado's sentence to run concurrently with sentences that he had received incident to four previous convictions.

. We note that the circuit court specifically ordered that Sobrado was jointly and severally liable to pay one burglary victim $7,293.37. However, the circuit court's sentencing order did not specify that Sobrado was jointly and severally liable to pay $1,850 to the other burglary victim.

.Sobrado’s MDOC time sheet is in the record, and it indicates that his maximum discharge date was October 16, 2013. His time *1117 sheet further indicates that his earliest possible ERS release date was December 9, 2007. His tentative discharge date, assuming that he satisfactorily participated in ERS, was June 21, 2009. He earned a total of three years and 282 days of earned time as a trusty. He also earned 140 days of meritorious earned time to reduce his initial ten-year sentence.

. That date matches the date of Sobrado's tentative discharge date on his MDOC time sheet.

. Because the circuit court disposed of Sobra-do's PCR motion without requiring a response from the State, the circuit court's disposition is more accurately characterized as a summary dismissal of Sobrado's PCR motion than a denial.

. Sobrado’s appellate brief contains no authority to support his claim. Ordinarily, the failure to cite authority in support of an argument on appeal renders an issue procedurally barred. See M.R.A.P. 28(a)(6). However, So-brado cited authority in the brief he filed in support of his PCR motion. Furthermore, "[w]here, as here, a prisoner is proceeding pro se, we take that fact into account and, in our discretion, credit not so wellffipleaded allegations ... [so] that a prisoner's meritorious complaint may not be lost because [it was] inartfully drafted.” Myers v. State, 583 So.2d 174, 176 (Miss.1991). Based on the precise circumstances of this case and the issues presented within it, we decline to find that this issue is procedurally barred. However, we caution pro se litigants that the failure to include authority in support of an argument on appeal will likely result in our finding that such an argument is procedurally barred.