# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00771-COA

**STEPHEN MONTALTO**                                                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                **APPELLEE**

DATE OF JUDGMENT:    04/27/2018
TRIAL JUDGE:      HON. WILLIAM E. CHAPMAN III
COURT FROM WHICH APPEALED: RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:  STEPHEN MONTALTO (PRO SE)
ATTORNEY FOR APPELLEE:   OFFICE OF THE ATTORNEY GENERAL
           BY: DARRELL C. BAUGHN
NATURE OF THE CASE:    CIVIL - POST-CONVICTION RELIEF
DISPOSITION:      REVERSED AND REMANDED - 05/21/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE J. WILSON, P.J., McCARTY AND C. WILSON, JJ.

## C. WILSON, J., FOR THE COURT:

¶1. Stephen Montalto appeals the circuit court's dismissal of his motion for post-conviction relief (PCR). We find the circuit court erred in finding that it lacked jurisdiction, so we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. After pleading guilty to aggravated assault and kidnapping charges in 2008, Montalto was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) followed by five years of supervised probation. The kidnapping offense involved a young child, so he was also ordered to register as a sex offender.

¶3. Because Montalto pled guilty, he did not directly appeal his conviction and sentence.

Montalto later filed two PCR motions, which the circuit court dismissed. *Montalto v. State*, 119 So. 3d 1087, 1089 (¶1) (Miss. Ct. App. 2013). Montalto appealed both dismissals, asserting (1) that his due-process rights were violated and (2) that he received ineffective assistance of counsel. *Id.* at 1092-93 (¶9). This Court found Montalto's claims lacked merit and affirmed the circuit court's dismissals. *Id*. at 1097 (¶26).

¶4.     The record indicates that while incarcerated, Montalto served in several jobs as a "trusty" and took advantage of self-improvement opportunities offered by MDOC, such that MDOC allowed him to earn credit toward his twenty-year sentence. On December 20, 2014, MDOC released Montalto from incarceration and placed him on earned-release supervision (ERS).[1] As part of this process, Montalto registered as a sex offender as previously ordered by the sentencing court.

¶5.     Approximately three weeks after Montalto's release, a field officer filed a Rule Violation Report (RVR) with MDOC asserting Montalto's residence did not meet the sex offender registration requirements. Following an administrative hearing on the RVR, MDOC revoked Montalto's ERS for failure to abide by ERS conditions. Montalto was reclassified and returned to prison.

---

[1] ERS is different than post-release supervision. *Sobrado v. State*, 168 So. 3d 1114, 1119 (¶16) (Miss. Ct. App. 2014). ERS "is operated exclusively by the MDOC, with no involvement by circuit courts." *Id.* at 1118 (¶15). While violations of post-release supervision conditions are reported to the circuit court, "[v]iolations of ERS conditions are only reported to the MDOC." *Id*. at 1118-19 (¶¶15-16) (citing Miss. Code Ann. § 47-7-27(3) (Supp. 2013)). After an ERS violation is reported to MDOC, an MDOC hearing officer will conduct an administrative revocation hearing. Administrative revocation hearing decisions must be appealed through MDOC's administrative remedy program. Miss. Code Ann. § 47-5-138(6).

¶6.     Montalto appealed the ERS revocation through MDOC's administrative remedy program (ARP).  On March 17, 2015, MDOC noted that Montalto's "[f]ailure to complete the conditions of ERS ha[d] been investigated" and concluded that because his kidnapping conviction was statutorily classified as a sex offense, he had actually never been eligible for ERS.[2]  As a result, MDOC denied Montalto's appeal and request for ERS reinstatement.

¶7.     In April 2015, Montalto filed a writ of habeas corpus in federal court and claimed his revocation and reclassification were unlawful.  The federal court dismissed the writ due to Montalto's failure to exhaust his state court remedies.  *Montalto v. Miss. Dep't of Corrections*, No. 3:15-CV-00457-CWR-FKB, 2017 WL 4340273, at *9 (S.D. Miss. Sept. 29, 2017).

¶8.     In December 2017, Montalto filed an application for leave with the supreme court in an effort to proceed with a third motion for PCR in circuit court based on MDOC's administrative actions.  Prior to receiving an order from the supreme court, Montalto filed a motion for PCR in the Rankin County Circuit Court, asserting (1) unlawful revocation of ERS, (2) unlawful revocation of earned time, and (3) unilateral changing of his charge.

¶9.     On April 27, 2018, the circuit court found it lacked jurisdiction pursuant to Mississippi Code Annotated section 99-39-7 (Rev. 2015) and dismissed Montalto's third motion for PCR.  Specifically, the circuit court found that Montalto's "conviction and

---

[2] Mississippi Code Annotated section 47-5-139(1)(d) (Rev. 2015) provides that a person convicted of a sex crime is ineligible for earned-time allowance.  Kidnapping is a sex offense when, as here, the victim is under the age of eighteen.  Miss. Code Ann. § 45-33-23(h)(i) (Rev. 2015).  Upon investigation, MDOC learned that it had miscoded Montalto's kidnapping offense without the sex offender identifier and that its initial placement of Montalto on ERS was erroneous because Montalto was ineligible for release.

sentence [were] affirmed by the Mississippi Court of Appeals" and that Montalto had "failed to obtain the necessary order from the Mississippi Supreme Court allowing him to file a motion for post-conviction relief."

¶10. A few days later, the supreme court found Montalto's application for leave was not properly before it, noting "Montalto was convicted by way of a guilty plea and there has never been a direct appeal of his conviction and sentence." The supreme court dismissed the application "without prejudice to be filed in the [circuit] court."

¶11. Montalto now appeals the circuit court's dismissal of his third motion for PCR, asserting the circuit court "erred in finding it lacked jurisdiction and dismissing [his motion for PCR that] he had filed contesting his . . . ERS revocation."

STANDARD OF REVIEW

¶12. We review a circuit court's findings of fact regarding denial or dismissal of a PCR motion for abuse of discretion. *Wallace v. State*, 180 So. 3d 767, 769 (¶7) (Miss. Ct. App. 2015). Questions of law are reviewed de novo. *Id.*

ANALYSIS

¶13. The circuit court dismissed Montalto's motion for PCR for lack of jurisdiction pursuant to section 99-39-7. Section 99-39-7 provides:

> The motion under this article *shall* be filed as an original civil action in the *trial court*, *except* in cases in which the petitioner's conviction and sentence have been appealed to the Supreme Court of Mississippi and there affirmed or the appeal dismissed. *Where the conviction and sentence have been affirmed on appeal or the appeal has been dismissed*, the motion under this article shall not be filed in the trial court until the motion shall have first been presented to a quorum of the Justices of the Supreme Court of Mississippi, convened for said purpose either in termtime or in vacation, and an order granted allowing

4

the filing of such motion in the trial court. The procedure governing applications to the Supreme Court for leave to file a motion under this article shall be as provided in Section 99-39-27.

(Emphasis added). As the supreme court pointed out in its order on Montalto's application for leave, albeit after the circuit court dismissed Montalto's PCR motion, "Montalto was convicted by way of a guilty plea and there has never been a direct appeal of his conviction and sentence."

¶14. Given that Montalto never directly appealed his conviction and sentence, he was not required to seek leave from the supreme court before filing his PCR motion. The circuit court thus erred in dismissing Montalto's PCR motion for lack of jurisdiction pursuant to section 99-39-7. The circuit court has exclusive original jurisdiction to consider the merits of Montalto's PCR motion. *See Graham v. State*, 85 So. 3d 847, 850-51 (¶¶5-6) (Miss. 2012). Accordingly, we reverse and remand to the circuit court for further proceedings consistent with this opinion.

¶15. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD AND LAWRENCE, JJ., CONCUR. McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶16. While I acknowledge that we must follow applicable precedent in reversing the circuit court's jurisdictional ruling, all this does is delay the inevitable. Under precedent it is clear that Mr. Montalto was never legally eligible for earned-release supervision (ERS). I write separately to emphasize that what we are bound to do today unnecessarily lengthens the

5

resolution of Mr. Montalto's claim, burdening the petitioner as well as our circuit court.

¶17. In general, the Court of Appeals is "able to affirm [a] circuit court because of the longstanding rule that we may affirm the trial court when it reaches the right result but for the wrong reason." *McClurg v. State*, 870 So. 2d 681, 682 (¶6) (Miss. Ct. App. 2004). Yet as pointed out by the majority, the Supreme Court has also ruled that "it was improper for the Court of Appeals to rule on the merits of [a petitioner's] motion without the circuit court doing so first, as the circuit-court had exclusive, original jurisdiction." *Graham v. State*, 85 So. 3d 847, 851 (¶7) (Miss. 2012).

¶18. While I appreciate that distinction, which may act to save certain PCRs from denial, in this unique case there seems to be only one possible result. The petitioner pled guilty to a kidnapping charge involving a child under the age of eighteen. When the victim of a kidnapping is under the age of eighteen, kidnapping is statutorily defined as a "sex offense." Miss. Code Ann. § 45-33-23(h)(i) (Supp. 2018).[3] A person convicted of a sex offense is not eligible for earned-time allowance or, by extension, ERS, which is obtained through earned-time allowance. *See* Miss. Code Ann. § 47-5-139(1)(d) (Rev. 2015); *Thomas v. Miss. Dep't of Corr.*, 248 So. 3d 786, 791 (¶20) (Miss. 2018).

¶19. This Court has repeatedly turned back challenges in very similar cases as the one presented today. *King v. McCarty*, 196 So. 3d 175, 176 (¶1) (Miss. Ct. App. 2016); *Culbert v. Epps*, 120 So. 3d 983, 985 (¶11) (Miss. Ct. App. 2012); *Adams v. Epps*, 900 So. 2d 1210,

---

[3] At the time of Montalto's plea, "sex offense" was defined in subsection (g)(i). The Mississippi Legislature subsequently amended section 45-33-23, and the definition of "sex offense" is now found in subsection (h)(i).

1212-13 (¶10) (Miss. Ct. App. 2005). In *Culbert*, an inmate convicted of a sex offense was mistakenly informed that he had accumulated earned time. *Culbert*, 120 So. 3d at 985 (¶11). Upon realizing the error, MDOC removed the inmate's earned time. *Id*. at 984 (¶2). The inmate subsequently filed a complaint seeking relief, which the circuit court dismissed. *Id*. at (¶3). The inmate appealed, asserting that his due-process rights were violated when MDOC removed his earned time. *Id*. at (¶1). This Court referenced *Adams* in affirming the circuit court's dismissal, noting that it is legally impossible for an inmate to earn time when serving a sentence for a sex offense. *Id*. at 985 (¶¶10-11, 13). We went on to find that because "time was never actually earned, nothing was taken from [the inmate] in violation of his due-process rights." *Id*. at (¶11); *see also Fields v. Ladner*, 226 So. 3d 599, 602 (¶8) (Miss. Ct. App. 2017) ("[A]n inmate has no vested liberty interest in receiving earned time.").

¶20. I believe the same situation is present in this case. There can only be one result, and so the better route would be to end this process today instead of reversing and remanding.

¶21. I also have grave concerns about a concerning pattern of delay exhibited by the State that unnecessarily delayed resolution of the claims made by the defendant. As the majority points out, the defendant previously asked for relief in federal court. During those proceedings, the State repeatedly defied *multiple* orders from both the magistrate and the district court itself to produce transcripts of the proceedings that resulted in a finding he had violated ERS. *Montalto v. Miss. Dep't of Corr*., No. 3:15-CV-00457-CWR-FKB, 2017 WL 4340273, at *2-4 (S.D. Miss. Sept. 29, 2017). During a hearing held before the district court,

the MDOC hearing officer admitted that there were no transcripts of any hearing because she "made clear that the recordings of many MDOC disciplinary hearings were abandoned." *Id*. at *4. Stunningly, the MDOC officer "testified that she found Montalto guilty because she was instructed to do so *before the hearing began . . . .*" *Id.* (emphasis in original).

¶22.    After examining the conduct by the State, the district court concluded it was "alarmed by the facts of this case and distressed with the practices at MDOC and the Attorney General's Office uncovered during these proceedings and which may never have been exposed but for Montalto asserting that he had been deprived due process and the filing of his motions for contempt." *Id*. at *7. This pattern of behavior meant that "the Attorney General's Office has disregarded Court Orders, presented incomplete information, and submitted patently false statements to the Court." *Id*.

¶23.    The district court was greatly troubled by this behavior and concerned with "[t]he nonchalance with which the State adopted false positions" because this "highlights the philosophy all too often shown by MDOC and the Attorney General's Office: ensuring just convictions obtained through just means is not a priority, or even a consideration." *Id*. at *8. The district court recognized the difficulty of defending against the heavy amounts of habeas cases, and that "prisoners file many, many specious and meritless petitions, and those who have the duty to respond may become jaded." The district court warned that "[b]eing jaded is one thing, but refusing to comply with directives from the court is something which cannot be excused regardless of the validity of any defenses to the claims." *Id*. The district court advised the attorneys for the State to revisit the Lawyer's Creed. *Id*. at *8 n.11.

8

¶24. Regarding the merits of the case, the district court could not see how MDOC's mock "hearings" revoking the ERS of the defendant "satisfy due process considerations," since "[t]here is no way to verify the contents of proceedings or that they even take place at all, because recordings apparently are not maintained and readily abandoned." *Id*. at *7. "And even if the contents were knowable, they do not affect the hearing officer's determination, as [the MDOC officer] testified that she was instructed by MDOC executives to find Montalto guilty before she heard any evidence." *Id*. The district court concluded: "This admission is more than troubling; it is a betrayal of justice." *Id*. Nonetheless, the district court declined to impose monetary sanctions on the State, and dismissed the defendant's claims for failure to exhaust administrative remedies—where he then made his way to our Court of Appeals. *Id*. at *9.

¶25. Before this Court, and despite this ruling by a federal district court, the State dug its heels in again. The State asserted in its brief that "Montalto was given a proper hearing for both his RVR and his re-classification, [and] his due process was protected . . . ." In light of the district court's ruling, and the uncontested facts and procedural posture of this case, I find the State's position statement beggars belief.

¶26. My colleague Judge Lawrence has recently written that "[t]he entire fundamental foundation of the criminal justice system is that the innocent should suffer no harm under our law and that guilty persons should be held accountable for their illegal acts upon a constitutional and legal investigation and trial." *Foster v. State*, No. 2017-KA-01466-COA, 2019 WL 1349723, at *3 (¶17) (Miss. Ct. App. Mar. 26, 2019) (Lawrence, J., specially

9

concurring). I would add to this lofty statement that once convicted, we should continue to treat those incarcerated or recently released with dignity and accord them due process as the law requires. As the district court wrote, "No person is stripped of all of his dignity or his right to due process upon incarceration." *Montalto*, 2017 WL 4340273, at *8.

¶27. The better path is one where the State genuinely grapples with the claims made by a petitioner, which will allow our Court to understand the real issues and resolve the dispute placed before us. This will allow all those seeking redress before our court system to have a fuller measure of justice and not one plagued by obstruction or delay.