# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00625-SCT

*KEITH DURAN SANDERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/11/2003 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 5/28/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT**:

¶1.     Keith Duran Sanders was convicted of murder in the shooting death of Darryl Baxstrum and sentenced to life imprisonment.  After due consideration, we find that Sanders was entitled to a competency hearing and reverse the conviction and sentence and remand for a new trial in accordance with this opinion.

## FACTS AND PROCEEDINGS

¶2.     On August 5, 2001, Sanders suffered a gunshot wound to the head.  As a result of the shooting, Sanders suffered brain damage and experienced temporary paralysis on the right side of his body.  Sanders ultimately regained use of his right leg, but continued to walk with

a limp, experienced trouble speaking, and suffered from anxiety, depression, and paranoia. At the time of his release from treatment, Sanders was taking three prescription medications: Zoloft, Nerantin,[1] and Zyprexa. Sanders continued to take these medications until approximately August 2002, when he lost his Medicaid benefits and could not afford the medications.

¶3.     On April 19, 2003, Sanders shot Daryl Baxstrum.[2] At least two individuals, Parrish Anderson and Trenell Edwards, witnessed the incident.  According to both Anderson and Edwards, Sanders approached Baxstrum, pulled a handgun out of his pocket, and began shooting.  As Baxstrum ran away, Sanders continued shooting, ultimately emptying his gun before getting into a truck and leaving the scene.

¶4.     Numerous officers were dispatched to the scene.  Officer Charles Swain, the first officer to arrive, found Baxstrum unresponsive.  Officer Barry Truhett found seven .45-caliber shell casings, which were recovered by another officer and later turned over to Richard Sistrunk, Chief Investigator for the City of Philadelphia Police Department.

¶5.     A short time after the incident, Officer Sistrunk received a call from the dispatcher advising him that Sanders, along with his mother, was at the jail turning himself over to authorities.  As Officer Sistrunk was getting out of his car at the jail, Sanders, who was still

---

[1] Though identified in the transcript as "Nerantin," no such medication exists.  See See Physician's Desk Reference (62nd ed. 2008).  Based on the uses described by Dr. Mark C. Webb in his testimony, the more probable identification of the medication is "Neurontin," a well-known medication commonly used for the purposes described.  *Id.* at 2462-64.

[2] Baxstrum had an affair with Sanders's wife, Rhoda Sanders, and this affair led to the birth of a child.  At the time of the shooting, Sanders had separated from his wife and had moved in with his mother.

outside the jail, stated "I shot him." Officer Sistrunk advised Sanders not to say anything else until he had advised him of his rights. When he had finished advising Sanders of his rights, Officer Sistrunk asked him if he understood, and Sanders responded that he did understand them. As they walked inside the jail, Sanders made another comment–"I have been shot before. I wasn't going to let Darryl shoot me first."

¶6.     Baxstrum died as a result of the shooting,[3] and Sanders was indicted for the murder in violation of Mississippi Code Section 97-3-19(1)(a).[4] Sanders pleaded not guilty.

¶7.     On July 3, 2003, Sanders filed a motion for psychiatric evaluation pursuant to Rule 9.06 of the Uniform Rules of Circuit and County Court Practice (URCCC), claiming that he was "of insufficient soundness of mind" such that he was "not capable of making a rational defense." Attached to and in support of this motion was the affidavit of Sanders's attorney, Robert Brooks. The motion further stated that Sanders "has exhibited self-destructive behavior, toward himself and others, subsequent to having been shot in the head," "has been treated with numerous psychotropic drugs," and "has been previously committed to a psychiatric ward."

¶8.     On July 9, 2003, the trial judge granted Sanders's motion for psychiatric evaluation. The judge's order instructed Dr. Mark C. Webb, a qualified psychiatrist, to examine Sanders

---

[3] Dr. Stephen Hayne, who performed the autopsy on Baxstrum, concluded that Baxstrum suffered three gunshot wounds, only one of which was lethal. According to Dr. Hayne, the shot that killed Baxstrum struck the left buttock and went through the left femoral artery.

[4] "(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:  (a) When done with deliberate design to effect the death of the person killed, or of any human being . . . ." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2004).

"to determine his present ability to stand trial and assist his attorney in his defense; and further examine him to determine his ability to know the difference between right and wrong and to understand the nature and quality of his actions at the time of the alleged offense."[5] Upon completion of the examination, Dr. Webb was to make a written report of his findings and provide copies to the trial judge, the district attorney, the circuit clerk, and Sanders's attorney.[6]

¶9.    A trial was held on November 10-11, 2003.  On the first day of trial, Sanders filed a notice that he would rely on the defense of insanity at the time of the alleged crime.  On November 11, 2003, following a jury trial, Sanders was found guilty of murder and sentenced to life imprisonment.

¶10.    Sanders's post-trial motion for a new trial or other relief was denied by the trial court. Sanders's petition for appeal, in forma pauperis, was granted, as was Sanders's motion to file an out-of-time appeal.  Sanders now appeals to this Court.

**DISCUSSION**

¶11.    Sanders raises three issues on appeal: (1) whether he received effective assistance of counsel; (2) whether the trial court erred in failing to conduct a competency hearing; and (3) whether the trial court erred in refusing jury instruction D-8.  This Court considers Sanders's second issue, the competency hearing, to be dispositive in this case.  Since we reverse and

---

[5]  The order directing Sanders to undergo a psychiatric examination lists the District Attorney as the moving party.  This is apparently a scrivener's error as the record clearly shows the motion seeking the mental evaluation was signed and filed by counsel for Sanders, the defendant, and no issue is made of this on appeal.

[6]  Dr. Webb testified at trial.

4

remand for a new trial based on the competency issue, this Court need not address the other two issues on appeal.

**Whether the Trial Court Erred in Failing to Conduct a Competency Hearing.**

¶12.    Sanders asserts that he should have been provided an on-the-record competency hearing pursuant to Rule 9.06.

¶13.    This Court has stated:

> The United States Supreme Court defines the standard for competency to stand trial as being "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." ***Dusky v. United States***., 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824; 362 U.S. 402, 80 S. Ct. 788, 788-89, 4 L. Ed. 2d 824; 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824, 825 (1960) (per curiam).

***Hearn v. State***, 3 So. 3d 722, 728 (Miss. 2008).  In ***Pate v. Robinson***, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), the United States Supreme Court held that when the evidence raises a sufficient doubt as to a defendant's mental ability to stand trial, that defendant is deprived of due process of law when the trial court does not, on its own, conduct a separate competency hearing.  In other words, "trial courts are *obligated* to conduct a competency hearing, either on the defendant's motion or *sua sponte*, if there is sufficient doubt about a defendant's competence." ***House v. State***, 754 So. 2d 1147, 1151 (Miss. 1999) (emphasis added) (citing ***Drope v. Missouri***, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975); ***Pate***, 383 U.S. 375).[7]

---

[7] The dissent correctly notes that ***House*** was a pre-Rule 9.06 case.  Rule 9.06 was adopted effective May 1, 1995.  *See* Rule 9.06.  House pled guilty to murder in 1989. ***House***, 754 So. 2d at 1149.  However, the facts in ***House*** show that, before accepting his guilty plea, the trial court ordered a medical examination to determine his competence and

¶14.    In *Pate*, Robinson was convicted of murder and sentenced to life in prison.  *Pate*, 383 U.S. at 376.  At trial, Robinson's attorney had argued that his client was insane and that he was mentally incompetent to stand trial.  *Id*.  Although Robinson's attorney did not request a competency hearing, the United States Supreme Court reversed his conviction, finding that he was constitutionally entitled to such a hearing.  *Id*. at 376-77.  The Supreme Court explicitly rejected the State's argument that the defendant had waived the defense of his competence to stand trial by failing to ask for a hearing on the issue.  *Id*. at 384.  The Supreme Court unambiguously stated that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."  *Id*.

¶15.    In Mississippi, when a defendant's present mental competency is in question, Rule 9.06 applies and states in pertinent part:

> If before or during trial the court, of its own motion or upon motion of an attorney, has *reasonable ground to believe* that the defendant is incompetent to stand trial, the court *shall order* the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> After the examination the court *shall conduct a hearing* to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to

---

competence to stand trial. *Id*. at 1151. Dr. Margie Lancaster stated in her report, in part, that "In our opinion, [House] has a rational as well as factual understanding of the charges against him and is capable of assisting his attorney in preparing a defense." *Id*. Furthermore, the trial court thoroughly questioned House concerning whether he understood his guilty plea. *Id*. at 1152.  The point being, that in *House*, unlike here, at a minimum, there was a medical report in the record on appeal concerning House's competency.

6

stand trial, then the court *shall make the finding a matter of record* and the case will then proceed to trial.

URCCC 9.06 (emphasis added).

¶16.    Rule 9.06 requires an on-the-record hearing to determine competency once the court has reasonable ground to believe that the defendant is incompetent.  The rule clearly uses the directive "shall" and not the permissive "may" language.  The rule requires that the trial court first, "*shall* conduct a hearing to determine if the defendant is competent" and, second, "*shall* make the finding a matter of record." URCCC 9.06.  In the face of this plain language, it is evident that it would be error not to hold a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial.

¶17.    In the instant case, Sanders moved for a psychiatric examination, and the trial court granted the motion and ordered the report to be provided to the defense, the State, and the trial court.[8]  Sanders was examined by Dr. Webb, a psychiatrist, who prepared a written report which was filed with the court on September 23, 2003, according to the docket.[9] Thereafter, the record does not reflects that an on-the-record hearing regarding Sanders's competency was ever held by the trial court.  Further, the record does not contain an explicit finding by the trial court that Sanders was competent to stand trial for murder.

_____

[8]  The Neshoba County Circuit Court docket pages, contained in the appellate court papers, indicate that a "medical report filed by Dr. Mark Webb (marked private & confidential)" was entered on September 23, 2003.  While the docket indicates receipt of the report, there is nothing in the record to demonstrate that "copies" of the report were provided to the trial court, defense counsel, or the district attorney's office, as the dissent asserts.

[9]  Dr. Webb's report was never transmitted to this Court as part of the appellate record.  Thus, this Court did not have the benefit of the report for our appellate review.

¶18. By finding that Sanders's motion for psychiatric examination was well taken and granting it, the trial court necessarily determined that some, if not all, of the assertions in Sanders's motion were sufficient to order a psychiatric examination of Sanders. In the motion, counsel for Sanders asserted that Sanders "is at this time of insufficient soundness of mind, and because thereof not capable of making a rational defense." The motion also asserted that Sanders "has exhibited self destructive behavior, toward himself and others, subsequent to having been shot in the head. The Defendant has been treated with numerous psychotropic drugs. Further he has been previously committed to a psychiatric ward." The motion was accompanied by an affidavit asserting that trial counsel believed Sanders "is of insufficient soundness of mind to make a rational defense."

¶19. This Court's recent decision in **Hearn** addressed the issue of competency and Rule 9.06. **Hearn**, 3 So. 3d at 728-32. There this Court found that "the trial court failed to comply in the strictest technical sense with Rule 9.06 which mandates that a competency hearing be conducted following a court-ordered mental examination." **Id**. at 730 (citing Rule 9.06). This Court, however, determined that strict compliance with Rule 9.06 was not required in order for Hearn to be heard regarding claims of mental incompetency. **Id**.

¶20. While instructive, **Hearn** is distinguishable from our case today. In **Hearn**, a court-appointed psychiatrist "testified at trial as to Hearn's competency and was subjected to cross-examination." **Hearn**, 3 So. 3d at 730. Specifically, during trial testimony, one of the examining physicians testified that he and two other medical experts "unanimously concluded that Hearn was competent to stand trial." **Id**. at 729. Since "Hearn was afforded

8

the opportunity to present competing evidence" this Court determined that the purpose of Rule 9.06 was satisfied by this Court. *Id*. at 730.

¶21. Here, Dr. Webb testified regarding Sanders's sanity at the time of the *offense*. However, *competency to stand trial* is an entirely different issue from an insanity defense because the latter concerns the defendant's *present* mental capacity while the former relates to a past mental state. *Martin v. State*, 871 So. 2d 693, 697-98 (Miss. 2004).

¶22. The record reveals that Dr. Webb knew the parameters of what was required by the court-ordered psychiatric evaluation. At trial, the State questioned Dr. Webb, as follows:

> Q. As it applies to this particular case, what were you asked to do?
>
> A. I was asked to evaluate Mr. Sanders, which I did, and then to along in the course of my evaluation find if there is an illness or not, and *also to ask or answer two other questions about his ability to stand trial, can he cooperate with his attorney*, and then what they call the McNaghten Rule, looking to see if he knew the difference between right and wrong, and knew the nature and quality of his actions at the time of the incident.

(Emphasis added). Based on his description of the purpose of Sanders's evaluation, Dr. Webb knew that a component of the evaluation was to give his opinion on whether Sanders was competent to stand trial.

¶23. Further, Dr. Webb was questioned three times on direct examination and one time on rebuttal concerning Sanders's mental state. However, the testimony elicited gave an opinion as to Sanders's mental state at the time of the murder, it did not address Sanders's competence to stand trial. The record contains the following excerpts on direct examination:

> Q. Now, based upon that evaluation on September the 8[th], did you reach an opinion as to Mr. Sanders' *mental state as the time he is said to have committed the act* that resulted in the death of Mr. Baxstrum?

9

A.    He was very evasive in talking about what happened, so I really couldn't gather what was going on at the time, but in my evaluation of him at my visit, he knew the nature and quality of his actions, knew the difference between right and wrong, and was not criminally insane.

*        *        *

Q.    Now, you have been able to sit out in the audience during the course of the trial here today; have you not?

A.    I have.

Q.    Heard the testimony of witnesses who described how this happened?

A.    I have.

Q.    Has that helped you, you know, further your opinion about Mr. Sanders' *mental state at the time surrounding the shooting* which resulted in the death of Mr. Baxstrum?

A.    It has. It's greatly cleared it up, and I felt agreed with my impression that I saw in September, which is that Mr. Sanders was functioning normally. The investigator said he was acting normally, just as he had known him for years. That night he was at a club doing something. We heard from one person, Trennell, who said he was talking to Mr. Sanders prior to the shooting, and everything appeared normal. This was not a crazy person wandering around town or something like that. This was a person just like you and me. He was going through normal actions, purposeful actions we will call it, going through his life, and these witnesses have all described that, have talked about he was acting normally. Nobody saw any abnormal behavior.

*        *        *

Q.    Finally, Dr. Webb, based upon your evaluation on September the 8th and the things you have learned today about the case and watching the testimony, can you give us an opinion as to the Defendant's *mental state at the time this act was committed*?

A.    *That he was not criminally insane. He knew the nature and quality of his actions at the time and also knew the difference between right and wrong at the time of the incident.*

10

(Emphasis added).

¶24.  On rebuttal, the State questioned Dr. Webb as follows:

Q.  Dr. Webb, you testified yesterday in the case?

A.  Sure did.

Q.  And yesterday you gave the jury your opinion *at the time that the Defendant shot and killed Darryl Baxstrum*, it was your opinion that he knew the difference between right and wrong.

A.  He did.  That is correct.

Q.  And also understood the nature and quality of his acts.

A.  That is correct.

(Emphasis added).

¶25.  The record excerpts reveal that Dr. Webb's testimony concerned Sanders's state of mind at the time of the April 19, 2003, shooting.  While this information is relevant, it did not answer the question of whether Sanders was competent to stand trial on November 11-12, 2003.  The record lacks any testimony that relates to Sanders's competency to stand trial. The docket indicates that Dr. Webb did file a report with the trial court.  However, the report was not entered into evidence and was not part of the record on appeal.  Therefore, this Court is unable to review the report and Dr. Webb's opinion, if any, as to Sanders's competency to stand trial. One may argue or speculate that the appellate record before us today was sufficient to assume that Sanders was competent to stand trial.  However, we reiterate the fact that the appellate record before us contains no evidence that Sanders was found to be competent to stand trial.  At a minimum, there was no definitive testimony  or report that determined Sanders competent to stand trial.  Thus, we are bound by the record before us.

11

Without any evidence concerning Sanders's competency to stand trial, to hold that testimony regarding sanity at the time of the offense is sufficient to demonstrate competency to stand trial would disregard and blur the well-established distinction between the two legal concepts. Accordingly, this Court reverses and remands for a new trial.

## CONCLUSION

¶26. For the above reasons, we reverse Sanders's conviction and sentence, and we remand this case for a new trial consistent with this opinion.

¶27. **REVERSED AND REMANDED**.

**CARLSON, P.J., DICKINSON AND LAMAR, JJ., CONCUR. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH AND CHANDLER, JJ. GRAVES, P.J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶28. While I agree that Sanders was entitled to a competency hearing, I respectfully disagree with this Court's recent holding in *Hearn v. State*, 3 So. 3d 722 (Miss. 2008), that a defendant's mental competency to stand trial may be decided during the trial on the merits when the trial court, before trial, had reasonable ground to believe the accused lacked the requisite mental competence to go to trial.

¶29. Over four decades ago, the United States Supreme Court held in *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), that when the evidence raises sufficient doubt as to a defendant's mental ability to stand trial, that defendant is deprived of due process of law when the trial court does not conduct a separate competency hearing.

12

This rule is no less viable today, and this Court has attempted to safeguard this right in the form of Rule 9.06 of the Uniform Rules of Circuit and County Court Practice. Rule 9.06 sets forth a clear procedure to be followed when a defendant's present mental competency is in question:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> After the examination the court *shall conduct a hearing* to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court *shall make the finding a matter of record* and the case *will then* proceed to trial.

(Emphasis added.)

¶30. This concept is hardly new. Long before **Pate** was decided, this Court recognized the need for a separate pretrial hearing on the issue of competency. In **Williams v. State**, 205 Miss. 515, 524-25, 39 So. 2d 3, 4 (1949), this Court held

> The trial of a defendant, when his mind is so clouded that he cannot remember and intelligently relate what occurred at the time of the commission of the alleged offense, is a denial of due process and contrary to public policy, and when it appears to the trial court that there is a probability that defendant is incapable of making a rational defense, *the trial should not proceed* until defendant's mental condition has been investigated and it appears he is sufficiently rational to make defense. We urge upon the trial courts to observe this constitutional right of defendants, with meticulous care, and submit to the jury, *preliminarily*, the issue of the defendant's sanity in all cases where there is a probability that defendant is incapable of making a rational defense.

(Emphasis added.) (Internal citations omitted.) *See also* **Jaquith v. Beckwith**, 248 Miss. 491, 500, 157 So. 2d 403, 407 (1963) ("Assuming a properly authorized psychiatric examination

13

has been made under the statute, the court and the jury may then consider the doctors' findings in determining, as a question *prior* to trial on the merits, the issue of present insanity.") (emphasis added) (citing **Robinson v. State**, 223 Miss. 70, 81, 77 So. 2d 265 (1955)). As indicated in **Jaquith v. Beckwith**, competency to stand trial, or the lack thereof, was determined by juries, in separate competency trials, prior to our providing by rule that such determinations be made by trial judges.

¶31. In **Hearn v. State**, 3 So. 3d 722, this Court abandoned our longstanding practice that mental competency be decided in advance of trial on the merits. Instead, the Court found that the trial court's finding of competency to stand trial was proper when evidence on this subject was elicited during the trial.[10] Had I been a member of this Court, I would have disagreed and dissented. The procedures of Rule 9.06 are in place to protect the due process rights of defendants whose competency to stand trial is in doubt. They are not technical requirements that may be sidestepped. By requiring a pretrial evidentiary hearing on the issue of competency, outside the presence of the jury, the accused is given a fair opportunity to be heard that is not otherwise available if the issue is presented during trial, as was approved in **Hearn**.

¶32. For example, the defendant's own testimony may be relevant, perhaps indispensable, to the question of whether he is competent to stand trial. In a separate, pretrial hearing devoted solely to the issue of competency, the defense attorney could call his or her client

---

[10]I note that unlike **Hearn**, in Sanders's case, there was never an on-the-record finding by the trial court that the defendant was mentally competent to stand trial, as Rule 9.06 mandates.

14

as a witness without dread of cross-examination on issues of guilt or innocence. However, if the issue of competency is tried during the a jury trial on the merits, the defendant would be less likely to take the stand for various reasons, including a reticence about being subjected to cross-examination. In such case, a chilling effect at best, and an outright denial at worst, would be placed upon the defendant's opportunity of personally presenting testimony on the issue of his own competency. Such a result offends basic tenets of due process.

¶33. In addition, evidence that would be relevant to an accused's competency to stand trial could be highly prejudicial if presented to a jury assigned the task of determining guilt or innocence. It is not at all unlikely that if a defendant lacks the mental competency to stand trial and assist his counsel in presenting a rational defense, his mental impairment will have caused him to have engaged in bizarre, socially unacceptable, and even criminal conduct. For example, a mentally incompetent person might enter a retail store, see something he likes and place it in his pocket without understanding the necessity of paying for the item. For a sane person, such conduct would constitute the crime of shoplifting. Though relevant and probative of mental incompetency, such evidence could be quite harmful to a defendant if adduced before a jury charged with judging whether he or she was guilty of the charge being tried. This is one of the reasons that a *separate* competency hearing mandated by URCCC 9.06 is the wise and fair way to proceed, and is consistent with state and federal due process requirements.

¶34. Trying the issue of competency before the trial jury is also problematic because competency to stand trial is decided by the trial judge, under the Mississippi procedure now

prescribed by Rule 9.06, while issues of guilt or innocence are, in most cases, decided by a jury. Rule 9.06 provides that "the *court* shall weigh the evidence and make a determination of whether the defendant is competent to stand trial." There is simply no need to expose the trial jury to evidence of a defendant's competency to stand trial and risk confusing the issues as well as prejudicing the defendant when our rules provide a just and rational procedure for resolving such matters.

¶35. It is readily foreseeable that the most knowledgeable witness on the question of whether an accused person is mentally competent to confer with his or her attorney and meaningfully assist in asserting a rational defense could be the defense attorney. This attorney's testimony could be easily adduced during a separate competency hearing, but not during the trial on the merits, with the jury present. By logical deduction, *Hearn* seems to contemplate that it could.

¶36. Of course, Rule 9.06 does make provision for a competency hearing *during* trial, should the need arise. Clearly, though, such a proceeding should be conducted outside the presence of the jury.

¶37. Because I would explicitly overrule *Hearn*, and the majority, though reaching the correct result, stops short of doing so, I respectfully concur in result only.

**DICKINSON, J., JOINS THIS OPINION.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶38. Because I find the assignment of error was not properly preserved for appeal and that Sanders has advanced nothing to support an inference of incompetence, I respectfully dissent.

16

¶39.    The trial court granted a  psychiatric evaluation on motion of Sanders's counsel

pursuant to Rule 9.06 of the Uniform Rules of Circuit and County Court Practice. The exam

was performed and a report was filed with the clerk's office. According to the docket, copies

were provided to the trial court and counsel for Sanders and the District attorney. The report

was never offered into evidence or even marked for identification and its contents are

unknown to this Court. The case proceeded to trial with no one requesting the required

hearing. Sanders himself took the stand and was subject to cross-examination on his insanity

defense. Still, no motion or request to set a hearing date for a competency hearing.

¶40.    The affirmative duty is  upon the party seeking action by the court upon any motion

or pleading to pursue that relief to a hearing and decision:

> **Rule 2.04.  Duties of Movant**
>
> It is the duty of the movant, when a motion or other pleading is filed, including
> motions for a new trial, to pursue said motion to hearing and decision by the
> court.  Failure to pursue a pretrial motion to hearing and decision before trial
> is deemed an abandonment of that motion; however, said motion may be heard
> after the commencement of trial in the discretion of the court.

 *See,* e.g., for non-binding persuasive discussion of movant's obligation to pursue relief, ***Potts***

***v. State***, 755 So. 2d 521, 524 (Miss. Ct. App. 1999).

¶41.    Sanders initiated matters by requesting a psychiatric examination but did not fulfill

the remaining affirmative obligations by pursuing the matter through hearing and conclusion.

Rather, he raises the issue of a competency hearing for the first time on appeal.  We have

consistently held that issues raised for the first time on appeal will not be addressed:

> Under Mississippi law, if an appellant raises for review an issue not raised in
> the pleadings, transcript, or rulings, the appellant must have preserved the
> issue by raising it in a motion for new trial.  Miss. Code Ann. § 9-13-31;

> *Jackson v. State*, 423 So. 2d 129, 131-32 (Miss. 1982)(citing *Colson v. Sims*, 220 So. 2d 345, 346 n. 1 (Miss. 1969) . . . The rationale for this rule is based on the policy of giving the trial judge, prior to appellate review, the opportunity to consider the alleged error.

*Ross v. State*, 603 So. 2d 857, 860-61 (Miss. 1992). The issue of whether an error occurred in the trial court in failing to hold a competency hearing has not been preserved for appellate review.

¶42. Additionally, I respectfully submit the majority's reliance upon *Pate v. Robinson*, 383 U.S. 375 (1966) is not apropos of the case at bar. In *Pate*, the defendant, Robinson, was denied any psychiatric examination to determine either his competency to stand trial or his sanity at the time he committed murder. At the time of his trial and conviction, Illinois had a statute which required the State to conduct a sanity hearing if there existed a "bona fide doubt" as to the defendant's mental status. *Id.* at 385. Here, Sanders was not denied access to professional evaluation. Sanders got his requested evaluation and left the matter there. Under these facts, *Pate* does not apply.

¶43. Similarly, I do not find *House v. State*, 754 So. 2d 1147 (Miss. 1999), to be on point. The decision in *House* occurred before the current amendment to Rule 9.06. In the wake of *Pate* and *Drope v. Missouri*, 420 U.S. 162 (1975), this Court recognized the necessity to impose an obligation upon trial courts to hold such hearings "*where there is sufficient doubt about a defendant's competence.*" *House*, 754 So. 2d at 1151. Sufficient doubt in the court's mind was the cornerstone of the rule we then created. In the absence of such doubt, the obligation to sua sponte order a competency hearing simply does not arise. There is nothing in the record to support a finding that Sanders was incompetent, not even his own

18

assertion.  On these facts, I find no obligation for the trial court to have ordered a competency hearing.

¶44.    For these reasons, I respectfully dissent.

**RANDOLPH AND CHANDLER, JJ., JOIN THIS OPINION.**