CARLTON, J.,
dissenting:
¶ 15. I respectfully dissent from the majority’s decision.
¶ 16. The appellant and majority assert that this ease must be reversed because no on-the-record competency hearing was held by the trial court. However, the record clearly reflects the receipt of the evaluation report,[3] the defense’s review of the report, and the trial court’s acknowledgment of Silvia’s right to request a hearing. *537 The record of the docket calls also reflects that the defense elected not to request a competency hearing. As.a result of the defense’s decision, no formal hearing was held, but the record reflects" that the defense and the judge received the report of Silvia’s mental evaluation prior to trial. The record shows that Silvia’s right to a competency hearing was honored by the trial court.
¶ 17. The transcript of the docket call in March 2011 shows that the defense counsel reported to the court, on the record, that Silvia received his psychological evaluation the week prior to that docket call.[4] The defense also stated at the docket call that it would' provide the court and the district attorney with copies of the report that day. The report of the mental evaluation also reflects that the trial court ordered the psychologist, Dr. Smallwood, to provide the court a copy. The defense continued to explain at that docket call that after reviewing.the report from the psychological evaluation, the defense anticipated filing only one pretrial motion. The trial judge acknowledged the defense’s intent to file a pretrial motion and directed the defense to proceed with filing the motion. Then, the docket call the next month (April 2011) shows that the sole motion the defense chose to file, and to request a hearing upon, was a motion to suppress on Fourth Amendment grounds.
¶ 18. According to the transcript from the April 5, 2011 docket call, the defense filed a singular motion to suppress,[5] and the trial judge then set a date to hear the motions. The transcript also shows the defense acknowledged at'the docket call that it hád received Silvia’s mental-evaluation. Clearly, the procedural history before us shows that the defense chose not to exercise. Silvia’s right to a competency hearing after receiving and reviewing the psychological evaluation and report. The record further reflects that the trial court honored .Silvia’s right to a competency hearing and provided the defense the opportunity to file a motion to request a competency hearing. As discussed, after reviewing the psychological evaluation, the defense intended to file only one motion, a motion to suppress.
¶ 19. Moreover, the record fails to contain evidence that would raise a reasonable question as to Silvia’s competency to stand trial, or to his sanity at the time of the offense, to necessitate the trial court ordering a" competency hearing sua sponte, absent a mechanical operation of Uniform Rule Circuit and County Court 9.06.[6] A review of the record fails to show any basis to support a bona fide reason for questioning the mental Competency or sanity of Silvia. See Miss.Code Ann. § 99-13-11 (Rev.2007) (mental examinations' for the accused). • Since the evidence -before the trial court .raised no bona fide doubt or reasonable question about Silvia’s competency to stand trial, I respectfully submit that no constitutional or due-process violation occurred herein.
¶20. A constitutional violation occurs only where the trial court fails to conduct a competency hearing where the evidence before the trial court raised a bona fide *538 doubt about the defendant’s competency to stand trial. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The standard for competency to stand trial is “whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... and whether he has a rational as well as factual understanding of the proceedings against him.” Hearn v. State, 3 So.3d 722, 728 (¶ 15) (Miss.2008) (citing Dusky v. United States, 362 U.S. 402, 402,80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).
¶ 21. In reviewing the evidence before the trial court, the record herein reflects that Silvia raised no insanity defense, and abandoned (pretrial) pursuit of any insanity defense at trial.[7] If Silvia had intended to raise a defense of insanity at trial, he was required to provide prior notice in writing to the State of such intention. See URCCC 9.07 (insanity defense). As reflected in the March and April 2011 docket-call transcripts and the record as a whole, Silvia abandoned his right to assert an insanity defense and also a competency hearing after his counsel received and reviewed his psychological evaluation report. See and compare United States v. Caplan, 633 F.2d 534, 538-39 (9th Cir.1980) (addressing abandonment of insanity defense and related examination request, as well as competency to stand trial; court found no error in lack of competency hearing where evidence raised no real question of competency). See also United States v. Clark, 617 F.2d 180, 184-85 (9th Cir.1980).
¶ 22. I willingly embrace precedent establishing that “[t]he due-process right to a fair tidal is violated by a court’s failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent.” Filiaggi v. Bagley, 445 F.3d 851, 858 (6th Cir.2006); United States, v. Makris, 535 F.2d 899, 909 (5th Cir.1976). However, this is not a case where the trial court refused to hold a competency hearing or denied the defense’s request for a delay in conducting such a hearing. The record shows the evaluation was completed and the county received the bill; and the defense counsel stated at docket call that defense would provide a copy of the mental-evaluation report to the trial court. The report itself acknowledged an order to provide the trial court with a copy of the mental-evaluation report.
¶ 23. In the context of the procedural history and facts of this case, to find error based upon a mechanical application of procedural rules fails to consider that the transcripts from the docket calls show that the trial court was apprised that the mental evaluation was completed and that the defense and trial court received a copy. The report itself acknowledged that the trial court ordered that a copy be provided to the trial judge. Also, the defense requested no hearing on the report or the competency issue, and the substantial evidence in the record showed Silvia’s competence to stand trial. See URCCC 9.06. For example, prior to testifying in his own defense, Silvia inquired of the court whether any of his prior convictions would be used against him for impeachment, and after advisement by the trial court on his reason not to testify, the trial court recessed. Silvia consulted with his attorney. When the trial court reconvened, Silvia told the trial court that he elected to testi *539 fy. He intelligently, consistently, and without difficulty answered questions on direct and cross-examination. Silvia’s testimony was detailed and recounted events leading up to the shooting. He also recalled his efforts after the shooting to clean up the crime scene and hide Darlene’s body in the freezer. He testified that he remembered standing in the doorway of the TV room and shooting a gun, and he testified that Darlene passed away after the first shot. Silvia testified that after she was shot, Darlene slouched in her recliner, and he remembered putting the gun away. He said that he did not remember the second shot, while also recalling that Darlene died after the first shot. Silvia testified that when he first awakened the next morning, he did not remember the shooting at first. However, when he got up and went into the bathroom and looked into the TV room, it all came back to him. Silvia stated that he felt scared and panicked. He also testified in some detail to the amount and type of alcohol he drank around the time of the shooting and afterwards. He explained that he put Darlene’s dead body in the freezer because the temperature outside reached nearly 100 degrees.
¶ 24. The evidence in the record shows that Silvia’s testimony was consistent with the autopsy that found Darlene suffered two gunshots to her head, which were fired from a close range. Silvia also provided two pretrial interviews to law enforcement. His Miranda.-rights waiver was admitted into evidence, without any objection by the defense, as the State’s exhibit twelve. The defense raised no issue as to whether Silvia intelligently or voluntarily waived his rights. In the second interview, Silvia admitted to knowing that he must have shot Darlene twice because a live round remained in the gun. Silvia recalled loading the gun with three live rounds. The record shows that the trial court received no information that, objectively considered, should reasonably have raised a doubt about Silvia’s competence to stand trial or alerted the trial judge about any possibility that Silvia lacked the ability or understanding to consult with his counsel or understand the proceedings. See Wade v. State, No. CIV.A. 13-5890, 2015 WL 225226, at *14 (E.D.La. Jan. 15, 2015); see also Lokos v. Capps, 625 F.2d 1258 (5th Cir.1980).
¶25. I respectfully acknowledge that this dissent must address the application of the recent case of Smith v. State, 149 So.3d 1027, 1035 (¶ 19) (Miss.2014), and I submit that the facts of Smith are distinct from this case. In Smith, the Mississippi Supreme Court found the defendant’s rights were violated where the trial court ordered a mental examination and then accepted his guilty plea without acknowledgment that the examination had been conducted or completed. Id. The defendant in Smith stated during his guilty-plea colloquy that he had been treated for depression and “psychosis or something like that.” Id. at 1030 (¶ 3). The trial court nonetheless accepted Smith’s guilty plea and sentenced him without acknowledging whether the mental evaluation had been completed and without conducting a competency hearing. Id. Smith subsequently filed a motion for post-conviction relief alleging that the trial court erred because the mental examination had never been performed. Id. at (¶4). Smith also argued that the trial court erred by failing to hold a competency hearing. Id. The supreme court agreed. Id. at 1035 (¶ 19), In so doing, the supreme court explained that when the evidence raises a sufficient doubt as to the defendant’s competency to stand trial, the defendant is deprived of due process of law if the trial court fails to conduct a separate competency hearing. Id. at 1033 (¶ 15).
*540 ; ¶ 26. In contrast, in the instant case, Silvia received the court-ordered psychological evaluation. As discussed, the transcripts from the docket calls show that the defense informed the trial court of the defense’s receipt of the report, deciding ultimately to raise no motion based on the results, despite the opportunity for a hearing provided to* Silvia by the trial judge. Silvia also 'received a trial on the merits that contained abundant evidence of his competency to stand trial and to assist and consult with counsel and understand the nature of the proceedings. The record is devoid of evidence raising a" reasonable question of his competency to stand trial, or sanity at the time of the offense.
¶ 27. Sanders v. State, 9 So.3d 1132, 1139 (¶ 25) (Miss.2009), is also distinguishable from the instant case since the trial court in Sanders ordered a mental examination, and afterwards the defendant sufficiently raised the defense of insanity at trial. In Sanders, the defense also provided the State with written notice of such prior to trial. Id. Since the trial court ordered a mental examination', and since Sanders provided the State and the trial court with pretrial notice of his insanity defense, the defense sufficiently raised the issue of sanity and competency. In the present case, however, Silvia gave no pretrial notice of an insanity defense and raised no such defense at trial. Moreover, the defense raised no evidence at trial reasonably questioning Silvia’s sanity or competency. The defense also raised no objection to the Miranda warnings, and the defense counsel clearly consulted effectively with Silvia during the trial.
¶ 28. In Pate v. Robinson, 383 U.S. 375, 376-77, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the defense counsel, throughout the proceedings, insisted on a lack of competence of the defendant. The United States Supreme Court found no waiver of the defendant’s right to a competency hearing therein based on counsel’s failure to request a hearing, explaining that the evidence introduced at trial showed a reasonable question of competency, theréby entitling him to a competency hearing. Id. at 385-86, 86 S.Ct. 836. In contrast, Silvia’s counsel told the judge he received the evaluation results but chose only to raise a Fourth Amendment suppression motion. Silvia’s counsel did not request a hearing even after the trial court’s recognition of Silvia’s right to a hearing and opportunity to request one, and neither the evidence nor the defense raised an issue of competency or M’Naghten[8] sanity at trial or during the pretrial hearing on motions.
¶ 29. A criminal defendant is presumed competent. Billiot v. State, 454 So.2d 445, 463 (Miss.1984). Clearly, the evidence before the trial court, and in this appeal, raises no reasonable question or bona fide doubt as to Silvia’s competence to stand trial. The record instead reflects abundant evidence of his competence to stand trial. Moreover, the report of the mental evaluation provided that Dr. Smallwood found Silvia was competent and ready to stand trial, and also determined that Silvia was sane at the time of the offense.' Dr. Smallwood opined that no further forensic evaluations were needed. As stated, the. trial court recognized Silvia’s right to a hearing, and the face of the record of the docket calls shows that the trial court and the' defense received the report of the mental evaluation. To reverse Silvia’s conviction for the failure of the trial court in this case to hold a competency hearing on the record, after documentation of receipt of the mental-evaluation report and a conscious choice by Silvia’s counsel to not *541 pursue such, opens the door to abuse of the judicial process.

. On- June 26, 2014, this Court ordered the trial court to conduct a hearing on the record to determine whether the record can be supplemented with either the pretrial-competency-hearing transcript (though no pretrial competency hearing occurred) or a Mississippi Rule of Appellate Procedure 10(c) statement. Exhibit D to the hearing regarding this ' Court's order contains the report of Silvia's mental evaluation performed on January 25, 2011. The report explained that the mental evaluation examined Silvia’s competency to stand trial and also his sanity at the time of the offense charged. The report reflects that the trial court stipulated that copies be sent to the court, the defense attorney, and the district attorney. The report also reflects that during the evaluation, Silvia was informed that a copy of the report would be provided to the trial court and to his attorney. In the report, Dr. Smallwood stated that she found Silvia mentally competent to stand trial and to make a rational defense, and that on the date of the charged crime of murder, Silvia was mentally capable of distinguishing between right and wrong. Dr. Smallwood also provided that no further-forensic evaluation was needed, and that Silvia appeared ready to cooperate with his attorney in the preparation of his case. The billing invoice for the report and evaluation is dated March 8, 2011.

. The transcript of the March 2011 docket call is consistent with documentation in the record of the date of the billing invoice: March 8, 2011.

. The defense filed a motion to suppress the results of the Search performed of Silvia’s home by sheriff’s department, including Darlene’s body. The defense claimed that the sheriff’s department entered Silvia’s home without a warrant and that no exigent circumstances existed to serve as an exception to the requirement that law enforcement obtain a warrant before entering the home.

.Discussing competence to stand trial.

. See M'Naghten's Case, 8 Eng. Rep. 718 (1843). The report of the mental evaluation reflects Dr. Smallwood's determination that, to a reasonable degree of medical certainty, Silvia was "mentally competent to stand trial and make rational defense,” and that on the date of the murder, Silvia "was mentally capable of distinguishing between right and wrong.”

. See M’Naghten’s Case, 8 Eng. Rep. 718 (1843).