RANDOLPH, Presiding Justice,
dissenting:
¶ 56. The result would be no different, whether this Court follows the well-established legal principle of waiver, or if this Court applies a proper plain-error analysis. Either endeavor results in the same outcome-the claimed error was harmless and did not result in a manifest miscarriage of justice. Our goal is to insure that Hollie had a fair trial. Fair trials are measured by a court’s confidence in their outcome. Based on the specific record before us, a manifest miscarriage of justice which prejudiced the outcome cannot be identified. Even if error is shown by the trial court’s failure to conduct a separate Rule 9.06 hearing, it is not reversible error in this case. See M.R.E. 9.06. The contents of the record and our law dispel such a conclusion.
¶ 57. Trial courts should respect the guarantees of our Constitution and apply our procedural and evidentiary rules. When a trial court fails, the risk of reversal is ever-present. However, the procedural error claimed in this case does not warrant a reversal. I would hold the claimed error is harmless beyond a reasonable doubt, and I would affirm the convictions and sentences of the Copiah County Circuit Court.
¶ 58. This record reveals that on January 11, 2010, Hollie pleaded guilty to the murder of Denmon Ward and the armed robbery of Lalit Patel. On March 16, 2010, Hollie was sentenced. Hollie waited until March 22, 2012, more than two years following his conviction and sentence, to complain. Hollie failed to object at trial, at sentencing, or by timely filing any post-trial motions. Hollie did not appeal his conviction and/or sentence. Hollie never sought remedy through post-conviction proceedings. It was not until this Court’s sua sponte review of Hollie’s death sentence that Hollie’s present counsel claims Hollie was denied a fundamental eonstitu- *840 tional right, but he makes no claim of ineffective assistance of counsel.[8]
¶59. In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court rejected the argument that errors of constitutional dimension mandate a reversal of criminal convictions.[9] Since Chapman, that Court has “repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.” Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). See also Rose v. Clark, 478 U.S. 570, 576—77, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). The record in this case supports the same result.
¶ 60. Hollie failed to lodge a contemporaneous objection when the trial court accepted his guilty plea without conducting a competency hearing. “If no contemporaneous objection is made, the error, if any is waived.” Batiste v. State, 121 So.3d 808, 834 (Miss.2013); cert. denied, — U.S. -, 134 S.Ct. 2287, 189 L.Ed.2d 178 (2014) (quoting Walker v. State, 913 So.2d 198, 227 (Miss.2005); Foster v. State, 639 So.2d 1263, 1270 (Miss.1994)). “A waiver is an intentional relinquishment of a known right or privilege.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It is well-established that a defendant may waive numerous constitutional rights. See Patton v. State, 34 So.3d 563, 564-65 (Miss.2010) (“As is true with most constitutional rights, the Sixth Amendment right to counsel can be waived.”); Byrom v. State, 927 So.2d 709, 722 (Miss.2006) (a defendant may waive his right to a jury during sentencing); Greenlee v. State, 725 So.2d 816, 827 (Miss.1998) (a defendant subject to custodial interrogation may waive certain constitutional rights and render any resulting confession admissible at trial); Coverson v. State, 617 So.2d 642, 647 (Miss.1993) (a defendant may waive his Miranda[10] rights). Additionally, rule violations may be waived. See Magee v. State, 124 So.3d 64, 70 (Miss.2013) (failure to request a continuance or mistrial when faced with an undisclosed witness or evidence results in waiver of the rule violation); Shell v. State, 554 So.2d 887, 894-95 (Miss.1989), rev’d in part on other grounds, Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) (Mississippi Rules of Evidence 504 (husband-wife privilege) and 601 (general rule of competency) can be waived by parties’ respective actions).
¶ 61. Rule 9.06 of the Uniform Rules of Circuit and County Court Practice provides that once a trial court orders a defendant to submit to a mental examination, the trial court is to “conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the de *841 fendant is competent to stand trial.” URCCC 9.06.
¶ 62. Hollie requested a mental examination, and the trial, court ordered an examination. On the same day the mental examination was ordered, the trial court granted the parties’ ore terms motion to reset the matter, setting dates for an omnibus hearing and trial. The omnibus hearing was scheduled for Monday, January 11, 2010, and the trial.was set for Tuesday, March 8, 2010.
¶63. Prior to the date the omnibus hearing was scheduled, Dr. Criss Lott determined Hollie was competent. The trial court, the prosecutor, Hollie, and Hollie’s attorneys all were made aware of Dr. Lott’s findings. Hollie offered no evidence on January 11, 2010 (the date set for an omnibus hearing), to the contrary. The record reveals that no separate competency hearing was conducted in open court for us to review, yet we are not left clueless on the issue. Clear evidence in the record reveals that Hollie was, in fact, competent.' Additionally, this Court has Dr. Lott’s report and the record of Hollie’s plea colloquy.
¶ 64. Rather than contesting competency, on the date of the scheduled omnibus hearing, Hollie entered guilty pleas for murder and armed robbery. The trial court specifically asked Hollie’s counsel if there was any reason why the guilty pleas should not be accepted, and both emphatically responded “no.” The trial court' made a finding at the plea colloquy that Hollie “knowingly and intelligently waived his constitutional rights” and “freely and' voluntarily entered a plea of guilty” as to -the counts of armed robbery and capital murder. Based upon all of the evidence presented to the trial court in this case, including Dr. Lott’s report and testimony from Hollie, the" trial court accepted Hollie’s guilty plea. No error was claimed at trial and is thus waived. Ross v. State, 954 So.2d 968, 987 (Miss.2007) (failure .to raise a contemporaneous objection waives the issue on appeal).
¶ 65. Were we to evade the law of waiver, only a plain-error analysis would allow an examination of the now-claimed error.
Under the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant and which affects a defendant’s fundamental, substantive right. For the plain-error doctrine to apply, there must have been an error that resulted, in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings.
Burdette v. State, 110 So.3d 296, 303 (Miss.2013). See also Conners v. State, 92 So.3d 676, 684 (Miss.2012) (After determining a constitutional right was violated, the Court concluded that “no manifest miscarriage of justice resulted from the error, which was harmless.”).
¶ 66. After Hollie turned himself in to local authorities and confessed to the armed robbery of Patel and the murder of Ward, Hollie’s counsel filed a motion for a mental examination. This motion was filed simultaneously with more than twenty other pretrial motions. On November 23, 2009, the trial court ordered a mental examination be conducted by Dr. Lott. Dr. Lott was instructed to provide the court and attorneys with a written report no later than ten days from the date of the evaluation. The trial judge also ordered that an omnibus hearing would be held on January 11, 2010, and set Hollie’s trials for March 2010. All parties and counsel appeared on January 11, 2010, but rather than seek a hearing on Hollie’s competency, Hollie offered a petition to plea, and Hollie’s attorneys, in open court, advised *842 the trial judge there was no impediment to entry of the pleas.
¶ 67. This record reveals that Hollie was evaluated by Dr. Lott on December 20, 2009. Pursuant to the court’s order, Dr. Lott’s report was prepared on December 29, 2009, and was provided to the trial court, the district attorney’s office, and Hollie’s attorneys. Dr. Lott opined that Hollie, who consented to the exam, had no difficulty comprehending the nonconfiden-tial nature of the exam and the fact that the court and all attorneys would receive a copy of his final report. Dr. Lott found that Hollie had no difficulty in communicating with him during the exam. Hollie was able to restate his rights and stated that he fully understood the charges against him and the maximum penalties that he could receive. Dr. Lott noted that Hollie had worked for several years with seismographic companies out of Texas and New York. “Mr. Hollie was alert, attentive and responded promptly to questions. He was precisely oriented. His speech was appropriate and at all times relevant and goal-directed. There was no indication of any disorganization of his thoughts, including pressured speech, flight of ideas, or loosening of association.” Hollie tested at a high-average to borderline range on intellectual tests. After administering the MMPI-2, Dr. Lott found that Hollie was “exaggerating his psychological problems,” and was unable to make any clinical interpretation.
¶ 68. When asked by Dr. Lott about the two crimes that he committed, Hollie stated that “he ‘went to the store and got $30.00 of gas and drove off. I beat the shit out of the guy and drove off. We had words the day before about religion. I went back to kick his ass.’ ” He also stated that “ T was hiding from the cops. I walked in there (pawn shop) and was looking around, looking at guns. I asked the guy what kind of deal he’d cut on these guns and he wouldn’t cut no deal. He called the police and I shot him.’ ”
¶69. Dr. Lott offered the following findings as to Hollie’s competency and sanity:
It is my opinion, to a reasonable degree of psychological certainty, that Mr. Hollie has the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding and he has a good factual and rational understanding of the nature and object of the legal proceedings against him.
[[Image here]]
It is my opinion, to a reasonable degree of psychological certainty, that Mr. Hollie was not suffering from a severe mental illness at the time of the alleged offenses.
Dr. Lott opined that no further evaluation was needed and that Hollie was competent to participate in the legal proceedings against him, which he did.
¶70. This record further reveals that on January 11, 2010, the date of an omnibus hearing, Hollie pleaded guilty to murder and armed robbery. At his hearing, Hollie stated that he was mentally competent. Additionally, he stated, under oath, that at the time of the crimes and at present, he was not “suffering from any mental illness.” Hollie listed out the elements of each crime and each fact of the crime that he believed to be true. He further stated that, “I offer my plea of ‘Guilty’ freely and voluntarily and of my own accord and with full understanding of all the matters set forth in the indictment(s) herein and in this Petition, and this plea is with the advice and consent of my lawyer.”
If 71. At the hearing, Hollie stated that he fully understood his petitions to plead guilty to both counts and that the content *843 of the petitions was true and correct. All of his rights were explained to him by the trial judge, and he stated that he understood he was waiving the State’s requirement to prove each charge beyond a reasonable doubt (which would include competency, had it been contested). He stated that he was satisfied with the representation he had received from his attorneys and that he had not experienced any problems with either attorney. Hollie informed the trial judge that he was not presently undergoing any type of mental treatment. Hollie stated that he was pleading guilty because he was guilty. Not an iota or tittle of evidence in the record suggests otherwise.
¶ 72. Dr. Lott’s report, which was received by the attorneys and trial judge before the hearing, was filed and made part of the court record on January 11, 2010, the date of the hearing, without objection. Hollie offered no proof to dispute Dr. Lott’s findings or opinions; nor did he seek a ruling on competency. Hollie’s attorneys both'were questioned by the trial judge as to whether there was any reason Hollie’s guilty pleas should not be accepted. Both responded in the negative. Neither attorney asked for a separate hearing on the issue of competency. If constitutional rights can be waived, cannot procedural rules also be waived?
¶ 73. There is nothing to suggest or even hint that the trial court did not receive, read, and cause Dr. Lott’s report to be part of the official court record. In addition to the expert’s uncontested report, the trial judge had the opportunity to observe Hollie and question him during the hearing on January 11, 2010. The trial court found that “Mr. Hollie knowingly and intelligently waived his constitutional rights, he has freely and voluntarily entered a plea of guilty in this cause, I find that there is a factual basis to support the charge and I accept his plea of guilty and adjudicate he is guilty of armed robbery ... [and] capital murder.” Such a finding is indicative of a finding of competency, for an incompetent defendant cannot knowingly and intelligently waive his rights.
¶ 74. Two months later, at Hollie’s sentencing, Hollie’s acknowledgment of guilt remained unchanged. During the sentencing trial, Hollie’s counsel made the following statement to the trial judge:
MR. BASS: ... For the record, Your Honor, I am M.A. Bass, Jr., and I represent Erik Wayne Hollie in these proceedings. And after much discussion loith Mr. Hollie, he has directed me to take some action and not to take certain actions in these proceedings. And to that end, Your Honor, he has signed an affidavit, and that’s what I would like to put in the record, Your Honor.
(Emphasis added.) Bass then read Hollie’s affidavit into the record:
Comes now the defendant, Erik Wayne Hollie, and files this his Affidavit and would show and aver unto the court the following, to wit:
1. I am Erik Wayne Hollie, Defendant in the above styled and numbered cause. I am twenty-five (25) years of age having been born October 1, 1984.... I’ve been incarcerated in the Copiah County Detention Center, Gallman, Mississippi, since September 8, 2009.
2. I pled guilty to capital murder on January 11, 2010, in Cause No.2009-0218; and I pled guilty to armed robbery on January 11, 2010, in Cause No.2009-219, in the Circuit Court of Copiah County, Mississippi. Both pleas were voluntarily made and free.ly given of my own accord and with the full understanding of all the matters set forth in the indictments and *844 in my Petitions to enter a plea of guilty to each indictment. The court accepted both Petitions and set sentencing for this date, March 16, 2010.
3. I understand that I may be sentenced to death or life in prison without parole or probation in Cause No.2009-218, capital murder. I understand that I may be sentenced to life in prison in Cause No.2009-219, armed robbery.
4. I have instructed my attorney, M.A. Bass, Jr., not to present any mitigating circumstances, mitigating witnesses, or mitigating jury instructions, at the sentencing hearing. He is not to question the jury panel or witnesses for the State, nor is he to call any witnesses in my favor. I have instructed my attorney not to present any opening statement or remarks or any closing statement or remarks on my behalf. I may address the jury as this is my constitutional right.
5. I believe my lawyer is competent and has done all that anyone could do to counsel and assist me, and I am fully satisfied with the advice and help my lawyer has given me. I understand that my decision is against the advice and consent of my attorney.
6. I am of sound mind, and I have been áeclared, pursuant to the forensic mental evaluation conducted by W. Criss Lott, Ph.D., competent to "... understand the charges against him and the possible penalty if convicted, including the death penalty.” Said evaluation and findings were made December 20, 2009.
7. I believe my lawyer is fully informed on all matters relating to the sentencing phase of my case. My lawyer has advised me of the nature of the proceedings, and the possible defenses and mitigating evidence that I may produce. I declare that no officer or agent of any branch of government, nor any other person has made any promises or inducements of any kind to me, to reject assistance in this matter. I have not been threatened, mentally or physically forced, intimidated, or coerced in any manner to reject any assistance in this matter.
8.I have been fully apprised of the consequences of my choice, and I am aware of the decision of the Supreme Court of Mississippi, and [its] decision in, Brawner v. State, 947 So.2d 254 (2006), wherein the Court said, “Trial counsel’s failure to put on mitigating evidence at ... murder trial was not ineffective assistance of counsel, as counsel prepared a mitigation case but did not present it based on defendant’s wishes, and defendant was fully apprised of the consequences of his choice.”
I, Erik Wayne Hollie, swear and aver, that the matters and facts stated herein-above, and true and correct as therein stated.
This affidavit was marked as the State’s first exhibit (S-l) for identification purposes. Dr. Lott’s fifteen-page opinion and report, directed to the trial judge and copied to all other counsel, was marked as the State’s second exhibit (S-2) for identification purposes. After the State’s closing statement, Hollie made the following statement to the jury: “I ask that you let the Lord deal with me and sentence me to death.”
¶ 75. The majority relies on Sanders v. State, 9 So.3d 1132 (Miss.2009), Smith v. State, 149 So.3d 1027 (Miss.2014), and Pate to support its finding that, once a mental evaluation is ordered, a competency hearing is mandatory, and if a competency hearing is not conducted, it is reversible error. (Maj. Op. at ¶¶ 20, 25, 26-28). All *845 cases are distinguishable from today’s case. In Sanders, this Court held that the trial court erred in failing to conduct a competency hearing and remanded the matter for a new trial. Sanders, 9 So.3d at 1139. The Court’s decision was based on a record which revealed that: two years' prior to the crime, Sanders had suffered a head injury, which resulted in brain damage; he was committed to a psychiatric ward and prescribed numerous psychotropic drugs; Sanders’s motion for mental evaluation was granted by the trial court, and an exam was conducted by Dr. Mark C. Webb; and finally, Dr. Webb’s report was never made part of the official court record and was not made part of Sanders’s appeal. Id. at 1133-34, 1139. During Sanders’s trial, Dr. Webb testified regarding Sanders’s sanity at the time of his offense; however, Dr. Webb never provided testimony as to whether Sanders was competent to stand trial. Id. at 1137.
¶ 76. The Court determined that there was no evidence in the record which would indicate that Sanders was competent to stand trial.
The docket indicates that Dr. Webb did file a report with the trial court. However, the report was not entered into evidence and was not part of the record on appeal. Therefore, this Court is unable to review the report and Dr. Webb’s opinion, if any, as to Sanders’s competency to stand trial .... At a minimum, there was no definitive testimony or report that determined Sanders competent to stand trial.
Id. at 1139 (emphasis added).
¶ 77. In Smith, a mental evaluation was ordered by the trial court; however, no examination occurred, a clearly distinguishable difference. Smith, 149 So.3d at 1029. Smith subsequently pleaded guilty to kidnapping, carjacking, and felony fleeing. Id. at 1030. In his second motion for post-conviction relief, Smith argued that the trial court erred by accepting his guilty plea because the court-ordered mental evaluation was never performed. Id. Smith attached affidavits from his parents that he “had been institutionalized numerous times for drug addiction and bipolar disorder, and for self-mutilation after he had slashed his arms with a razor. Smith’s father additionally stated that Smith had been prescribed drugs for bipolar disorder.” Id. Hollie makes no such claims.
¶ 78. The Court of Appeals affirmed the trial court’s denial of Smith’s petition, finding that “the order for a mental evaluation did not state the reason for the mental evaluation and reasoned that a trial court is empowered to order a mental evaluation to address matters other than competency, such as to support an insanity defense or to generate mitigation evidence for use in sentencing.” Id. at 1034. This Court noted that the trial court’s order was ambiguous “as to whether the mental evaluation was ordered for the purpose of determining Smith’s competence to stand trial.” Id. Additionally, evidence was before the trial court that Smith had mental problems, for Smith stated at his plea hearing that “he had been treated for depression and ‘psychosis or something like that,’ and was taking medication for those conditions.” Id. at 1030. This Court held that “Smith presented sufficient evidence supporting the denial of his fundamental right not to be convicted while incompetent to survive the summary dismissal of his motion for PCR.” Id. at 1035. The Court remanded the case to the trial court for an evidentiary hearing. Id.
¶ 79. Even more distinguishable is Pate. Four witnesses testified at Robinson’s trial, revealing that he had a long history of disturbed behavior: he suffered from headaches during his childhood, he *846 believed someone or something was after him, he had a “starey look and seemed to be just a little foamy at the mouth,” he attempted to jump from a moving cab on his way to the mental hospital and had to be strapped in a wheelchair due to his violent behavior, he heard voices that threatened him, he saw visions of animals, he was highly nervous, he previously had shot and killed his son and attempted suicide by shooting himself in the head, and he had attempted suicide by jumping into a lagoon. Pate, 383 U.S. at 376-383, 86 S.Ct. 836. All four witnesses testified that they believed Robinson to be insane. Id. at 383, 86 S.Ct. 836.
¶ 80. The Illinois Supreme Court found the evidence presented was not sufficient to warrant a hearing based on Robinson’s mental alertness at trial. Id. at 385, 86 S.Ct. 836. However, the U.S. Supreme Court reversed, holding that the trial court had ignored the contradictory evidence presented at trial, finding that
... the record shows that counsel throughout the proceedings insisted that Robinson’s present sanity was very much in issue. He made a point to elicit Mrs. Robinson’s opinion of Robinson’s “present sanity.” And in his argument to the judge, he asserted that Robinson “should be found not guilty and presently insane on the basis of the testimony that we have heard.” Moreover, the prosecutor himself suggested at trial that “we should have Dr. Haines’[s] testimony as to his opinion whether this man is sane or insane.” With this record we cannot say that Robinson waived the defense of incompetence to stand trial.
Id. at 384, 86 S.Ct. 836. It is clear from the Pate opinion that the U.S. Supreme Court made an extensive review of the trial record. I do not disagree with the holding in Pate; however, I do disagree that the record before us today presents the same set of facts which would result in the reversal of Hollie’s convictions. Nothing in the record before us supports overturning Hollie’s convictions or sentences.
¶ 81. The facts of today’s case, as evidenced by the record before us, paint a very different picture. Hollie has offered no past history of mental illness. During his evaluation with Dr. Lott, Hollie had no difficulty comprehending all that was asked of him. Hollie was able to articulate fully the crimes he had committed and likewise fully acknowledged an understanding of the charges against him and the penalties he could receive. Dr. Lott’s report, which found Hollie was competent, was made a part of the official court record on two separate occasions: the day of the pleas and again by Hollie’s own counsel at the sentencing hearing. Significantly, it is available for our review as “part of the record on appeal,” unlike in Sanders. See Sanders, 9 So.3d at 1139. Ample evidence is presented in this case for this Court to make a determination that Hollie was competent.
¶ 82. After a thorough review of the record before this Court, I would find that Hollie waived a separate Rule 9.06 hearing. Finally, the claimed error did not result in a manifest miscarriage of justice. Hollie’s confession, guilty plea, statement to the jury, and Dr. Lott’s report all provide overwhelming evidence of guilt, and Hollie has suffered no prejudice.

.On January 2, 2014, the State filed a Motion to Set Execution Date with this Court. On January 6, 2014, this Court ordered Hollie to file a response to the State's motion. The Office of the State Public Defender, Capital Defense Counsel Division, filed a response on behalf of Hollie on January 10, 2014. Hollie argued that his sentence had never been reviewed by this Court pursuant to Section 99-19-105. This Court denied the State's motion and held that it would conduct a review of Hollie's sentence as mandated by Section 99-19-105.

. Decided one year after Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), this is a case relied upon heavily by the majority opinion. Pate is patently distinguishable, as will be more fully shown infra.

. Miranda v. Arizona, 384 U.S. 436, 545, 86 S.Ct. 1602, 1665, 16 L.Ed.2d 694 (1966).